# Challenge to Constitutionality of a State Statute

Print

This form must be completed by a party filing a petition, motion or other pleading **challenging the constitutionality of a state statute**. The completed form must be filed with the court in which the cause is pending as required by Section 402.010 (a-1), Texas Government Code.

**Cause Number** *(If Known):*    7:26-cv-    **Court** *(If Known):*    U.S. District Court, Midland/Odessa

Styled:  MARK JOSEPH WATSON v. TEXAS MUNICIPAL LEAGUE INTERGOVERNMENTAL RISK POOL, et. al.

(e.g., John Smith v. All American Insurance Co.; in re Mary Ann Jones; In the Matter of the Estate of George Jackson)

**Contact information for party\* challenging the constitutionality of a state statute.** (*\*If party is not a person, provide contact information for party, party's representative or attorney.*)

| | |
|---|---|
| Name:  MARK JOSEPH WATSON | Telephone:  (512) 522-1832 |
| Address:  1101 THORPE LANE, PMB 105-8 | Fax: |
| City/State/Zip: SAN MARCOS, TEXAS 78666 | State Bar No. (if applicable): |
| Email:  mark.joseph.watson@gmail.com | |

Person completing this form is:    ☐ Attorney for Party  ☑ Unrepresented Party ☐ Other:

**Identify the type of pleading you have filed challenging the constitutionality of a state statute.**

☑ Petition    ☐ Answer    ☐ Motion (Specify type):
☐ Other:

**Is the Attorney General of the State of Texas a party to or counsel in this cause?**

☑ Yes    ☐ No

**List the state statute(s) being challenged in your pleading and provide a summary of the basis for your challenge.** (Additional pages may be attached if necessary.)

SEE ATTACHED

9/5/13

# Attachment to Constitutional Challenge Form: List of Challenged Statutes & Basis for Challenge

*Plaintiff* Mark Joseph Watson brings primary facial and as-applied constitutional challenges to the following Texas statutory frameworks and provisions:

1. **Texas Local Government Code § 172.014 (West 2025)**
   - Summary of Challenge: This statute unconstitutionally isolates intergovernmental risk pools from the regulatory oversight of the Texas Department of Insurance (TDI) and the enforcement mechanisms of the Texas Insurance Code. By completely eliminating standard administrative protections, the statute violates the Equal Protection Clause, the Due Process Clause, and the Separation of Powers Doctrine of the Texas Constitution. Furthermore, this statutory exemption creates an unfair competitive advantage over private insurers, violating the Commerce Clause, and conflicts with the McCarran-Ferguson Act, rendering the statute void under the federal Supremacy Clause.

2. **Texas Constitution Article XI, § 9 and Texas Property Code Ann. § 43.002**
   - Summary of Challenge: These provisions insulate municipal corporations, state entities, and intergovernmental risk pools from forced sales, attachments, and executions. The Defendants have weaponized these property protection exemptions to retroactively eviscerate, impair, and obliterate vested, pre-existing contractual remedies and financial obligations. When deployed against a matured, self-executing contract or security agreement, these provisions cease to function as reasonable protections and instead act as an unconstitutional state-sanctioned mechanism to clear a state contractor's ledger, violating the federal Contract Clause (U.S. Const. Art. I, § 10).

3. **Texas Civil Practice and Remedies Code Ann. § 114.001**
   - Summary of Challenge: While purporting to waive immunity for certain written breach of contract claims, this statute imposes severe, arbitrary restrictions and caps on the types and amounts of damages a private contracting party can recover—explicitly excluding consequential damages, punitive damages, and predefined contractual penalties. By fundamentally truncating bargained-for remedies after a breach has occurred, the statute unconstitutionally impairs contractual obligations under the Contract Clause of the United States Constitution and attempts to rewrite the terms of commercial marketplace transactions where state entities have already divested themselves of immunity.

4. **Texas Civil Practice and Remedies Code Chapter 11**
   - Summary of Challenge: The state courts have unconstitutionally expanded and applied this "vexatious litigant" framework to restrict judicial access and suppress a defendant's right to assert mandatory, compulsory counterclaims under Texas Rule of Civil Procedure 97(a). As applied to a defendant asserting defensive counterclaims arising out of an express contract dispute, this statutory framework violates the Due Process, Equal Protection, and Supremacy Clauses of the United States Constitution. It functions as a pretextual mechanism to permanently bar judicial access and insulate defaulting state actors without essential evidentiary findings.

Number: 7:26-cv-00____

In the United States District Court

for the *Western District of Texas,* MIDLAND-ODESSA DIVISION

**MARK JOSEPH WATSON**,

*Compulsory Counterclaim Plaintiff,*

vs.

**TEXAS MUNICIPAL LEAGUE INTERGOVERNMENTAL RISK POOL**, **KELLY HANCOCK**, in his official capacity as *Acting Texas Comptroller of Public Accounts*, **KEN PAXTON**, in his official capacity as *Attorney General of Texas*, **TEXAS STATE UNIVERSITY**, and the **STATE OF TEXAS**,

*Counterclaim Defendant via Subrogation Agreement,* and *Ancillary Claim Defendants*

on this **ORIGINAL VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF:** PRIMARY FACIAL AND AS-APPLIED CONSTITUTIONAL CHALLENGES TO TEXAS STATUTES (28 U.S.C. § 1331) AND SUPPLEMENTAL CIVIL RIGHTS, RACKETEERING, AND CONTRACT CLAIMS (28 U.S.C. § 1367) stating that the statutory **deregulation of risk pools** has resulted in **systemic administrative failures and the unauthorized evasion of liability**. The TEXAS MUNICIPAL LEAGUE INTERGOVERNMENTAL RISK POOL (TMLIRP) is an intergovernmental self-insurance pool created by political subdivisions under Tex. Loc. Gov't Code Ann. §§ 172.001–.015 (West 2025) of the Texas *Local Government Code* to provide workers' compensation and liability coverage; however, *Plaintiff* alleges that its operational frameworks are being utilized to **circumvent lawful compensation** and immunity restrictions.

Dated: Thursday, May 21, 2026

In the United States District Court

for the *Western District of Texas*,  MIDLAND-ODESSA DIVISION

| | |
|---|---|
| MARK JOSEPH WATSON, *Compulsory Counterclaim Plaintiff*, v. TEXAS MUNICIPAL LEAGUE INTERGOVERNMENTAL RISK POOL, KELLY HANCOCK, in his official capacity as *Acting Texas Comptroller of Public Accounts*, KEN PAXTON, in his official capacity as *Attorney General of Texas*, *Counterclaim Defendant via Subrogation Agreement* and *Ancillary Claim Defendants*. | No. 7:26-cv-00_____ |

**ORIGINAL VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF: PRIMARY FACIAL AND AS-APPLIED CONSTITUTIONAL CHALLENGES TO TEXAS STATUTES (28 U.S.C. § 1331) AND SUPPLEMENTAL CIVIL RIGHTS, RACKETEERING, AND CONTRACT CLAIMS (28 U.S.C. § 1367)**

NOW COMES, Mark Joseph Watson, *Compulsory Counterclaim Plaintiff* (*Plaintiff*), filing this *Original Verified Complaint for Declaratory and Injunctive Relief*. *Plaintiff* asserts a compulsory counterclaim arising out of a breach of a TEXAS REAL ESTATE COMMISSION (TREC) *Unimproved Property Contract* (UPC). This claim is formalized via an *Affidavit of Reservation of Rights* (ARR), which operates as an adhesion or implied-in-fact contract created through notice and acquiescence. Additionally, *Plaintiff* asserts multiple breaches of obligations under *Non-Negotiable Bills of Lading* (NNBOL), which have converted into a self-executing contract and security agreement with power of sale and strict nonjudicial foreclosure, triggered by the systemic deprivation of constitutional rights under 42 U.S.C. § 1981. These security interests have been fully perfected against the deposit accounts of the STATE OF TEXAS (Texas or State), THIRD COURT OF APPEALS (3rd COA), HAYS COUNTY DISTRICT COURT (trial court), ect. ... and are currently in default. The NNBOL constitutes a receipt, title document, and binding commercial contract.

*Plaintiff* brings a formal facial and as-applied constitutional challenge to Tex. Loc. Gov't Code § 172.014 (West 2025). This statute unconstitutionally isolates intergovernmental risk pools from the regulatory oversight of the TEXAS DEPARTMENT OF INSURANCE (TDI) and the enforcement mechanisms of the Texas *Insurance Code*. By completely eliminating standard administrative protections, the statute violates the *Equal Protection Clause*,[1] the *Due Process Clause*,[2] and the *Separation of Powers Doctrine of the Texas Constitution*.[3] Furthermore, this statutory exemption creates an unfair competitive advantage over private insurers, violating the *Commerce Clause*,[4] and conflicts with the *McCarran-Ferguson Act*, thereby rendering the statute void under the *Supremacy Clause*.[5] Operationally, TMLIRP utilizes this deregulatory shield to engage in anticompetitive behavior, price-fixing, and collusion, directly infringing upon the protections established by the *Sherman Antitrust Act*[6] and the *Clayton Antitrust Act*[7].

Plaintiff further challenges the constitutionality of Tex. Cons. Art. XI, § 9, Tex. Prop. Code Ann. § 43.002, and Tex. Civ. Prac. & Rem. Code Ann. § 114.001. These provisions are actively being weaponized by the *Defendants* to impair, retrogress, and obliterate vested contractual obligations and remedies, in direct violation of the federal *Contract Clause*.[8]

Finally, *Plaintiff* challenges the constitutionality of Tex. Civ. Prac. & Rem. Code ch. 11. The state courts have unconstitutionally expanded and applied this "vexatious litigant" framework to suppress a defendant's right to assert mandatory, compulsory counterclaims under Tex. R. Civ. P. 97(a). This statutory framework violates the *Due Process*, *Equal Protection*, and

---

1    U.S. Const. amend. XIV, § 1
2    U.S. Const. amend. V; U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law").
3    Tex. Const. art. II, § 1.
4    U.S. Const. art. I, § 8, cl. 3
5    U.S. Const. art. VI, cl. 2
6    *Sherman Antitrust Act*, ch. 647, 26 Stat. 209 (1890) (codified as amended at 15 U.S.C. §§ 1–7).
7    *Clayton Antitrust Act*, ch. 323, 38 Stat. 730 (1914) (codified as amended at 15 U.S.C. §§ 12–27).
8    U.S. Const. Art. I, § 10

*Supremacy Clauses* of the *United States Constitution* by permanently barring judicial access without essential evidentiary findings.

In strict compliance with 28 U.S.C. § 2403(b) and Fed. R. Civ. P. 5.1(a)(1)(B), *Plaintiff* has served the *Attorney General of Texas* with the required formal notice of a constitutional challenge to state statutes. Service of this *Original Verified Complaint*, alongside the necessary constitutional challenge forms, was executed electronically via const_claims@texasattorneygeneral.gov. A courtesy copy of these filings has also been provided to TDI to ensure administrative awareness of the deep regulatory implications involved.

Under 28 U.S.C. § 2403(b) and Fed. R. Civ. P. 5.1(a)(1)(B), the *Attorney General of Texas* maintains a statutory right to intervene in this action within **sixty days** after the filing of notice **or court certification**, whichever is earlier. Pursuant to Fed. R. Civ. P. 5.1(d), a party's failure to file or serve this notice does not forfeit an otherwise timely asserted constitutional claim.

Pursuant to the *Federal Rules of Civil Procedure* and the *Local Rules of the United States District Court for the Western District of Texas*, all served defendants must serve an answer or a responsive pleading within **twenty-one days** of service of the summons and complaint. Specifically, Fed. R. Civ. P. 12(a)(1)(A)(i) dictates that private entities, municipal corporations, and local political subdivisions … including TMLIRP … are bound by this strict 21-day responsive window.

The extended 60-day response window set forth in Fed. R. Civ. P. 12(a)(2) and Fed. R. Civ. P. 12(a)(3) is exclusively reserved for the UNITED STATES, its agencies, or federal officers sued in an official capacity. This extended timeline does not apply to state-level intergovernmental entities or political subdivisions. Failure by the *Defendants* to respond within the mandated 21-day period constitutes an **absolute commercial default**. Consequently,

*Plaintiff* is entitled to immediate entry of default judgment and the enforcement of strict

nonjudicial foreclosure against the commercial accounts and assets of the defaulting entities to

fully satisfy the outstanding default obligations.

## I.    TABLE OF CONTENTS

ORIGINAL VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF: PRIMARY FACIAL AND AS-APPLIED CONSTITUTIONAL CHALLENGES TO TEXAS STATUTES (28 U.S.C. § 1331) AND SUPPLEMENTAL CIVIL RIGHTS, RACKETEERING, AND CONTRACT CLAIMS (28 U.S.C. § 1367)..................................................................2
  I. TABLE OF CONTENTS..........................................................................................5
  II. TABLE OF AUTHORITIES....................................................................................7
  III. CERTIFICATE OF INTERESTED PERSONS.......................................................10
      (a) THE COMPULSORY COUNTERCLAIM PLAINTIFF...............................10
      (b) THE COUNTERCLAIM DEFENDANT VIA SUBROGATION AGREEMENT........10
      (c) THE ANCILLARY CLAIM DEFENDANTS..................................................10
  IV. PRELIMINARY STATEMENT AND NATURE OF THE ACTION.................................11
  V. JURISDICTION AND VENUE................................................................................12
      (a) JURISDICTION..............................................................................................12
      (b) VENUE............................................................................................................13
      (c) COMPLIANCE WITH RULE 5.1...................................................................14
  VI. PARTIES..............................................................................................................14
      (a) COMPULSORY COUNTERCLAIM PLAINTIFF..........................................14
      (b) COUNTERCLAIM DEFENDANT (VIA SUBROGATION)...........................14
      (c) ANCILLARY CLAIM DEFENDANTS............................................................14
  VII. STATUTE OF LIMITATIONS...............................................................................15
      (a) ACCRUAL AND ONGOING FRAUD.............................................................15
      (b) IMPACT OF PREVIOUS LITIGATION.........................................................15
      (c) STATEMENT ON LIMITATIONS...................................................................16
  VIII. CONSTITUTIONAL CHALLENGE TO STATE STATUTES...................................16
  IX. ENFORCEMENT OF CIVIL RIGHTS AND CONTRACT CLAIMS............................16
  X. THE SUBROGATION RELATIONSHIP AND OPERATIONAL ROLE OF TMLIRP.....17
  XI. BACKGROUND....................................................................................................17
  XII. THE UNDERLYING CONTRACTUAL DISPUTE AND ADMINISTRATIVE LIABILITIES............................................................................................................18
  XIII. THE CASE AGAINST TEXAS STATE UNIVERSITY.............................................20
      (a) FACTUAL BACKGROUND AND CONCRETE INJURY-IN-FACT.................20
      (b) LEGAL INJURY AND THE WEAPONIZATION OF Tex. Cons. Art. XI, § 9.............21
      (c) CLEAR ARTICLE III STANDING AND REDRESSABILITY...................22
  XIV. APPLICABILITY OF THE GOVERNMENT-AS-CONTRACTOR DOCTRINE AND RELEVANT WAIVERS OF IMMUNITY................................................................23
      (a) NATURE OF THE DOCTRINE.......................................................................23
      (b) OPERATIONAL WAIVER OF SOVEREIGN AND JUDICIAL IMMUNITY.............23
      (c) BINDING EFFECT OF NOTICE AND ACQUIESCENCE...........................24
      (d) UNAMBIGUOUS WAIVER OF ALL DEFENSES........................................24
  XV. THE LITIGATION HISTORY BEFORE THE THIRD COURT OF APPEALS AND DUE PROCESS IMPLICATIONS............................................................................25

(a)  THE THIRD COURT OF APPEALS' MANDATED DUTY TO TRANSFER TO THE FIFTEENTH COURT OF APPEALS..................................................................................25
(b) THE CONTRADICTORY APPLICATION OF SERAFINE V. CRUMP......................26
(c) THE NON-NEGOTIABLE BILL OF LADING (NNBOL) AS AN ADHESION CONTRACT TO THE OATH OF OFFICE.........................................................................26
(d) CONVERSION INTO A PERFECTED SECURITY AGREEMENT AND AUTHORIZED FORECLOSURE....................................................................................27
XVI. STANDING...................................................................................................................27
(a) INJURY-IN-FACT..........................................................................................................28
(b) CAUSALITY...................................................................................................................28
(c) REDRESSIBILITY..........................................................................................................29
XVII. COUNT I: DECLARATORY JUDGMENT — Facial and As-Applied Unconstitutionality of Tex. Loc. Gov't Code § 172.014 (West 2025).......................................29
(a) VIOLATION OF EQUAL PROTECTION CLAUSE....................................................30
(b) VIOLATION OF DUE PROCESS CLAUSE..................................................................30
(c) VIOLATION OF COMMERCE CLAUSE....................................................................30
(d) VIOLATION OF SUPREMACY CLAUSE....................................................................30
(e) VIOLATION OF CONSTITUTION'S SEPARATION OF POWERS..........................30
(f) VIOLATION OF SHERMAN ANTITRUST ACT.........................................................31
(g) VIOLATION CLAYTON ANTITRUST ACT...............................................................31
XVIII. COUNT II: DECLARATORY JUDGMENT — Violation of the U.S. Contract Clause (Tex. Const. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002)...................................................31
(a) THE CONSTITUTIONAL PROHIBITION AGAINST CONTRACTUAL IMPAIRMENTS..................................................................................................................31
(b) THE STATUTORY MECHANISM OF IMPAIRMENT...............................................31
(c) FACIAL AND AS-APPLIED VIOLATION OF THE U.S. CONTRACT CLAUSE.....32
(d) REQUIREMENT FOR FEDERAL INTERVENTION AND DEFAULT ENFORCEMENT.................................................................................................................33
XIX. COUNT III: DECLARATORY JUDGMENT — Unconstitutional Impairment of Remedies under Tex. Civ. Prac. & Rem. Code Ann. § 114.001.................................................33
(a) THE ABSOLUTE FEDERAL PROHIBITION AGAINST STATE-SANCTIONED REMEDIAL EVASION........................................................................................................33
(b) THE STATUTORY MECHANICS OF Tex. Civ. Prac. & Rem. Code Ann. § 114.001'S REMEDIAL IMPAIRMENT.................................................................................................33
(c) FACIAL AND AS-APPLIED VIOLATIONS OF THE U.S. CONTRACT CLAUSE...34
(d) FEDERAL SUPREMACY AND THE REQUIREMENT FOR UNCAPPED DEFAULT ENFORCEMENT.................................................................................................................35
XX. COUNT IV: DEPRIVATION OF CIVIL RIGHTS (42 U.S.C. § 1983) — As-Applied Violation of Due Process via Tex. Civ. Prac. & Rem. Code ch. 11..........................................35
(a) THE ABSOLUTE FEDERAL PROHIBITION AGAINST STATE-SANCTIONED REMEDIAL EVASION........................................................................................................35
(b) THE STATUTORY MECHANICS OF THE REMEDIAL IMPAIRMENT..................36
(c) FACIAL AND AS-APPLIED VIOLATIONS OF THE U.S. CONTRACT CLAUSE...36
(d) VIOLATION OF THE DUE PROCESS CLAUSE.........................................................37
(e) VIOLATION OF THE EQUAL PROTECTION CLAUSE............................................37
(f) VIOLATION OF THE SUPREMACY CLAUSE.............................................................38
(g) VIOLATION OF SEPARATION OF POWERS DOCTRINE.......................................38
(h) SUMMARY FOR FEDERAL COURT REVIEW..........................................................38

XXI. COUNT V: CIVIL RICO (18 U.S.C. § 1964) — Pattern of Fraudulent Administrative Activity..................................................................................................................................38
    (a) TMLIRP AS A CORRUPT ENTERPRISE.....................................................................38
    (b) THE COURTS AS A RACKETEERING INFLUENCED.............................................39
    (c) JURISDICTION AND REMEDIES..................................................................................39
XXII. RELIEF SOUGHT........................................................................................................40
    (a) DECLARATORY JUDGMENT.......................................................................................40
    (b) INJUNCTIVE RELIEF....................................................................................................40
    (c) COMPENSATORY DAMAGES & ENFORCEMENT OF SECURITY INTERESTS.40
    (d) ENFORCEMENT VIA THE TEXAS COMPTROLLER VENDOR HOLD SYSTEM41
XXIII. CONCLUSION............................................................................................................41
APPENDIX A: JUDICIAL NOTICE OF LEGAL WRONGS SUFFERED BY THE PLAINTIFF ..................................................................................................................................................43
APPENDIX B: CASE HISTORY, CLERK'S RECORD, AND REPORTER'S RECORD..........44
APPENDIX A: THE UNDERLYING CONTRACT AND LIEN DOCUMENTS.......................45

## II.       TABLE OF AUTHORITIES

COMMON LAW.....................................................................................................................
    SUPREME COURT OF TEXAS..........................................................................................
        Serafine v. Crump, No. 23-0272 (Tex. June 21, 2024).........................................................26
    SUPREME COURT OF THE UNITED STATES.................................................................
        Brown v. Texas, 443 U.S. 47 (1979)....................................................................................21
        Railroad Co. v. McClure, 77 U.S. (10 Wall.) 511, 515 (1870)............................................**22**
        Terry v. Ohio, 392 U.S. 1 (1968).........................................................................................21
        Ward v. Vill. of Monroeville, Ohio, 409 U.S. 57, 61-62 (1972).........................................40
        Ward v. Village of Monroeville, 409 U.S. 57, 61–62 (1972)...............................................23
        Will v. Michigan Department of State Police, 491 U.S. 58 (1989).....................................26
    TEXAS SECOND COURT OF APPEALS...........................................................................
        Am. Homeowner Pres. Fund, LP v. Pirkle, 475 S.W.3d 507, 523 (Tex. App. 2015)...........**17**
FORMS.....................................................................................................................................
    Challenge to the Constitutionality of a State Statute..........................................................10, 14
    Texas Real Estate Commission, Unimproved Property Contract (Form ID: 9-15)...................18
REGULATIONS.......................................................................................................................
    FEDERAL RULES OF CIVIL PROCEDURE........................................................................
        Fed. R. Civ. P. 12(a)(1)(A)(i)................................................................................................4
        Fed. R. Civ. P. 12(a)(2)..........................................................................................................4
        Fed. R. Civ. P. 12(a)(3)..........................................................................................................4
        Fed. R. Civ. P. 5.1............................................................................................................**10,** 14
        Fed. R. Civ. P. 5.1(a)(1)(B)...................................................................................................4
        Fed. R. Civ. P. 5.1(d).............................................................................................................4
    TEXAS RULES OF CIVIL PROCEDURE.............................................................................
        Tex. R. Civ. P. 96.................................................................................................20, 25, 36, 44
        Tex. R. Civ. P. 97(a)..........................................................................................3, 18, 28, 36, 38
STATUTES................................................................................................................................
    TEXAS CIVIL PRACTICE AND REMEDIES CODE............................................................
        Tex. Civ. Prac. & Rem. Code § 11.054.................................................................................37
        Tex. Civ. Prac. & Rem. Code Ann. § 114.001..............................3, 11, 16, 28, 33, 34, 35, 40
        Tex. Civ. Prac. & Rem. Code Ann. § 16.064 (West 2015)...............................................15
        Tex. Civ. Prac. & Rem. Code ch. 11.........3, 12, 16, 18, 20, 24, 28, 29, 35, 36, 37, 38, 39, 40

TEXAS GOVERNMENT CODE.............................................................................................................
    Tex. Gov't Code § 402.010(a-1).........................................................................................10
TEXAS INSURANCE CODE..............................................................................................................
    Tex. Ins. Code § 541.003..................................................................................................39
    Tex. Ins. Code § 542.003..................................................................................................39
TEXAS LOCAL GOVERNMENT CODE...........................................................................................
    Tex. Loc. Gov't Code § 172.014 (West 2025)......3, 11, 14, 16, 24, 25, 28, 29, 30, 31, 38, 40
    Tex. Loc. Gov't Code Ann. § 271.152..............................................................................18
    Tex. Loc. Gov't Code Ann. §§ 172.001–.015 (West 2025)................................................1
TEXAS PENAL CODE.......................................................................................................................
    Tex. Penal Code Ann. § 30.05..........................................................................................21
TEXAS PROPERTY CODE.................................................................................................................
    Tex. Prop. Code Ann. § 43.002....................................3, 11, 16, 20, 21, 22, 28, 31, 32, 33, 40
TEXAS TAX CODE.............................................................................................................................
    Tex. Tax Code § 33.54(c)...........................................................................................**17**, 28
    Tex. Tax Code § 34.08(b)..........................................................................................**18**, 28
    Tex. Tax Code § 34.08(c)..............................................................................................**18**
UNITED STATES CODE.....................................................................................................................
    15 U.S.C. §§ 1–7.................................................................................................................3
    15 U.S.C. §§ 12–27.............................................................................................................3
    18 U.S.C. § 1961..............................................................................................................13
    18 U.S.C. § 1964........................................................................................................12, 38
    18 U.S.C. § 1964(a).....................................................................................................13, 39
    18 U.S.C. § 1964(c).....................................................................................................13, 39
    18 U.S.C. § 1968..............................................................................................................13
    28 U.S.C. § 1331.........................................................................1, 2, 12, 23, 38, 41
    28 U.S.C. § 1367.....................................................................1, 2, 12, 13, 23, 28, 42
    28 U.S.C. § 1391..............................................................................................................13
    28 U.S.C. § 1391(c)(2)...................................................................................................**13**
    28 U.S.C. § 1391(d).......................................................................................................**13**
    28 U.S.C. § 1746..............................................................................................................42
    28 U.S.C. § 2283..............................................................................................................13
    28 U.S.C. § 2403(b)......................................................................................................4, 14
    42 U.S.C. § 1981..................................................................2, 12, 23, 29, 35, 38
    42 U.S.C. § 1981(c)..........................................................................................................24
    42 U.S.C. § 1983.................................................12, 13, 15, 16, 19, 21, 23, 29, 35, 38, 39
    42 U.S.C. §1981(c)...........................................................................................................24
TEXAS CONSTITUTION....................................................................................................................
    Tex. Cons. Art. XI, § 9...................................................3, 11, 16, 20, 21, 22, 28, 31, 32, 33, 40
    Tex. Const. art. II, § 1........................................................................................................3
    Tex. Const. Art. XI, § 9....................................................................................................31
UNITED STATES CONSTITUTION...................................................................................................
    U.S. Const. amend. V..................................................................................................29, 30
    U.S. Const. amend. V; U.S. Const. amend. XIV, § 1...........................................................3
    U.S. Const. amend. XIV, § 1......................................................................................3, 29, 30
    U.S. Const. Art. I, § 10...............................................................................................3, 16
    U.S. Const. art. I, § 8, cl. 3......................................................................................3, 29, 30
    U.S. Const. art. VI, cl. 2..........................................................................................3, 29, 30

### III. CERTIFICATE OF INTERESTED PERSONS

**(a)    THE COMPULSORY COUNTERCLAIM PLAINTIFF**

**MARK JOSEPH WATSON**
1101 Thorpe Lane, PMB 105-207
San Marcos, Texas 78666


**(b)    THE COUNTERCLAIM DEFENDANT VIA SUBROGATION AGREEMENT**

**Attention: Jeff Thompson**
TEXAS MUNICIPAL LEAGUE
INTERGOVERNMENTAL RISK POOL
1821 Rutherford Lane, Suite 100
P.O. Box 149194
Austin, Texas 78714

**(c)    THE ANCILLARY CLAIM DEFENDANTS**

*Texas Comptroller of Public Accounts*
**Attention: Kelly Hancock, in his official capacity as *Acting Texas Comptroller of Public Accounts***
Lyndon B. Johnson (LBJ) State Office Building
111 East 17th Street
3rd Floor (General Counsel's Office)
Austin, Texas 78774

*Office of the Attorney General of Texas*
**Attention: *Associate Deputy Attorney General for Civil Litigation*[9]**
Price Daniel Sr. Building, 8th Floor
209 West 14th Street
Austin, TX 78701

TEXAS SECRETARY OF STATE
*Office of the Texas Secretary of State*
**Attention: Adam Bitter, General Counsel**
400 W. 15th Street
Austin, TX 78701
**Attention: *Jessica Barta***
*General Counsel*
TEXAS DEPARTMENT OF INSURANCE
Barbara Jordan Building
1601 Congress Avenue
AUSTIN, TX 78701-1408

TEXAS STATE UNIVERSITY
**Attention: Kara Holsinger, J.D.**
*Associate General Counsel*
601 University Drive, JCK 1040
San Marcos, Texas 78666.

---

[9] Fed. R. Civ. P. 5.1 Constitutional Challenge to a Statute. (a) Notice by a Party. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly: … (2) serve the notice and paper ... on the **state attorney general** if a state statute is questioned—either by certified or registered mail or by sending it to an **electronic address designated by the attorney general for this purpose** (*Challenge to the Constitutionality of a State Statute* … Tex. Gov't Code § 402.010(a-1) … const_claims@texasattorneygeneral.gov).

## IV.     PRELIMINARY STATEMENT AND NATURE OF THE ACTION

This action is brought before the UNITED STATES DISTRICT COURT for the *Western District of Texas*, MIDLAND-ODESSA DIVISION, to vindicate fundamental constitutional protections and remedy a systemic evasion of legal liability by state and municipal actors. At its core, this lawsuit presents a dual-front challenge addressing both deep-seated statutory unconstitutionality and severe civil rights violations.

First, this Complaint raises primary facial and as-applied constitutional challenges to several Texas statutory frameworks. Most notably, it targets Tex. Loc. Gov't Code § 172.014 (West 2025), which unconstitutionally insulates intergovernmental risk pools from the standard regulatory oversight of the TEXAS DEPARTMENT OF INSURANCE (TDI). This statutory deregulation has stripped citizens of essential administrative protections, resulting in systemic failures and anti-competitive abuses. Additionally, the *Plaintiff* challenges the constitutionality of Tex. Cons. Art. XI, § 9, Tex. Prop. Code Ann. § 43.002, and Texas *Civil Practice and Remedies Code* Chapters 11 and Tex. Civ. Prac. & Rem. Code Ann. § 114.001. These provisions have been actively weaponized by state actors to retroactively obliterate vested contractual remedies and suppress a defendant's right to assert mandatory, compulsory counterclaims.

Second, invoking the Court's supplemental jurisdiction, this action seeks enforcement of civil rights, racketeering, and common-law contract claims that are inextricably intertwined with the underlying constitutional violations. The *Defendants* have repeatedly engaged in commercial marketplace transactions under the *"Government as a Contractor Doctrine,"* thereby divesting themselves of sovereign immunity. Yet, when confronted with their own commercial defaults and valid liabilities established under an *Affidavit of Reservation of Rights* (ARR) and *Non-Negotiable Bills of Lading* (NNBOL), they retreated behind these unconstitutional statutory shields.

When the *Plaintiff* sought proper recourse, the state judiciary exhibited a total collapse of neutrality, choosing to insulate these defaulting state entities rather than acting as a neutral arbiter. The state courts unconstitutionally expanded the "vexatious litigant" framework of Tex. Civ. Prac. & Rem. Code ch. 11 as a pretextual weapon to quash the *Plaintiff*'s legitimate defensive counterclaims, effectively barring judicial access without essential evidentiary findings. Because these claims arise from a common nucleus of operative facts, federal intervention is urgently required to preserve the rule of law, restore constitutional access to a neutral judiciary, and enforce the *Plaintiff*'s rightful default remedies.

**\*\*\***

The primary federal questions, civil rights protections, and supplemental claims asserted herein are properly brought pursuant to the following authorities:

- **Federal Question Jurisdiction:** 28 U.S.C. § 1331.
- **Supplemental Jurisdiction:** 28 U.S.C. § 1367.
- **Civil Rights Claims:** 42 U.S.C. § 1981 and 42 U.S.C. § 1983.
- **Civil Remedies for Racketeering Activity:** 18 U.S.C. § 1964.

**V.     JURISDICTION AND VENUE**

The UNITED STATES DISTRICT COURT for the *Western District of Texas*, MIDLAND-ODESSA DIVISION needs to first look for a federal question (such as state statute constitutionality claims) to establish its primary authority. Since the contract claims are against the same state actors and are deeply intertwined with the litigation history that led to the "vexatious litigant" label, the court may hear both under its combined federal and supplemental jurisdiction.

**(a)     JURISDICTION**

- **Federal Question Jurisdiction:** Established under 28 U.S.C. § 1331 due to constitutional challenges (Equal Protection, Due Process, Commerce Clause, Supremacy Clause, and Contract Clause) and federal civil rights claims under the *Civil Rights Act of 1964* (42 U.S.C. § 1983).

- **Supplemental Jurisdiction (28 U.S.C. § 1367):** Once a federal question is established (e.g., the constitutional challenge to the litigant status), the court can exercise "supplemental jurisdiction" over related state-law contract claims that arise from the same nucleus of facts.
- **Racketeering Influenced and Corrupt Organizations Act (RICO),  18 U.S.C. § 1961– 18 U.S.C. § 1968:** Once a federal question is established, the court can consider a RICO complaint specifically under 18 U.S.C. § 1964(a) and 18 U.S.C. § 1964(c), which provide for civil remedies and treble damages for injuries resulting from racketeering activity that arise from the same nucleus of facts.
- **The Anti-Injunction Act (28 U.S.C. § 2283):** Generally, federal courts are prohibited from staying proceedings in a state court. However, an exception exists if the injunction is "expressly authorized by Act of Congress" (such as under 42 U.S.C. § 1983 for civil rights violations) or is necessary to protect the federal court's own jurisdiction and judgments.
- **The Rooker-Feldman Doctrine:** This doctrine often prevents federal district courts from acting as appellate courts for state court losers. To succeed, the *Plaintiff* would likely need to challenge the constitutionality of the state statute itself rather than asking the federal court to simply overturn a specific state court's final order.
- **Equitable Standards:** For the court to issue an injunction, *Plaintiff* must demonstrate a substantial likelihood of success on the merits, a substantial threat of irreparable injury, and that the injunction would not disserve the public interest.

**(b)     VENUE**

TMLIRP has **significant contacts** and **policies affecting the residents** of every county in the state of Texas including the *Western District of Texas* and the counties served by the MIDLAND-ODESSA DIVISION. This fact establishes the MIDLAND-ODESSA DIVISION as a **proper venue**. The *Western District of Texas*, MIDLAND-ODESSA DIVISION is a proper venue under 28 U.S.C. § 1391 due to:

- TMLIRP is deemed to reside in **any judicial district** in which such *Subrogation Counterclaim Defendant* is subject to the Court's personal jurisdiction with respect to the civil action in question [28 U.S.C. § 1391(c)(2)[10]].
- TMLIRP shall be deemed to reside in **any judicial district** in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State [28 U.S.C. § 1391(d)[11]].

---

10  28 U.S.C. § 1391 **Venue generally** (c)  Residency. **-** For all venue purposes **-** ...   (2)  an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be **deemed to reside**, if a defendant, **in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question** and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and ...

11  28 U.S.C. § 1391 **Venue generally** … (d) (d) Residency of Corporations in States With Multiple Districts. **-** For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation **shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State**, and, if there is no such

**(c)     COMPLIANCE WITH RULE 5.1**

As required by 28 U.S.C. § 2403(b) and Fed. R. Civ. P. 5.1, the *Attorney General of Texas* was served with the *Challenge to the Constitutionality of a State Statute* form and this *Challenge to the Constitutionality of Tex. Loc. Gov't Code § 172.014 (West 2025)* … at const_claims@texasattorneygeneral.gov.

## VI.     PARTIES

**(a)     COMPULSORY COUNTERCLAIM PLAINTIFF**

1. Mark Joseph Watson is an individual residing in Hays County, Texas. He maintains a mailing address at 1101 Thorpe Lane, PMB 105-207, San Marcos, Texas 78666. Plaintiff brings this action pro se to vindicate federally and state-protected constitutional and contractual rights.

**(b)     COUNTERCLAIM DEFENDANT (VIA SUBROGATION)**

2. Texas Municipal League Intergovernmental Risk Pool (TMLIRP), as Counterclaim Defendant via Subrogation Agreement, is an intergovernmental self-insurance pool created by political subdivisions under Chapter 172 of the Texas Local Government Code. TMLIRP maintains its principal place of business in Austin, Travis County, Texas. TMLIRP may be formally served with process by serving its Executive Director, Jeff Thompson, at 1821 Rutherford Lane, Suite 100, Austin, Texas 78754 (or P.O. Box 149194, Austin, Texas 78714).

**(c)     ANCILLARY CLAIM DEFENDANTS**

3. Texas Comptroller of Public Accounts is an agency of the State of Texas. Defendant Kelly Hancock is sued in his official capacity as the Acting Texas Comptroller of Public Accounts. The Comptroller's Office is responsible for administering the state vendor hold system under Texas Government Code § 403.055. Service of process may be effectuated at the Lyndon B. Johnson (LBJ) State Office Building, 111 East 17th Street, 3rd Floor (General Counsel's Office), Austin, Texas 78774.
4. Office of the Attorney General of Texas is the chief legal officer and executive department of the State of Texas. The Attorney General is joined as an ancillary defendant pursuant to 28 U.S.C. § 2403(b) and Federal Rule of Civil Procedure 5.1 due to the facial constitutional challenges raised against state statutes. Service of process may be effectuated upon the Associate Deputy Attorney General for Civil Litigation, Price Daniel Sr. Building, 8th Floor, 209 West 14th Street, Austin, Texas 78701.
5. Texas State University is a state institution of higher education and an agency of the State of Texas, component of the Texas State University System. Service of process may be

---

district, the corporation shall be deemed to reside in the district within which it has the most significant contacts. …

effectuated upon Kara Holsinger, J.D., Associate General Counsel, at 601 University Drive, JCK 1040, San Marcos, Texas 78666.

6. The State of Texas is a sovereign state of the United States and is named herein as a defendant via the operational frameworks of its specific statutory enactments being challenged under the U.S. Constitution. Service of process may be effectuated by serving the Texas Secretary of State, Attention: Adam Bitter, General Counsel, 400 W. 15th Street, Austin, Texas 78701.

7. Texas Department of Insurance (TDI) is an administrative agency of the State of Texas tasked with regulating the business of insurance. Service of process may be effectuated upon Jessica Barta, General Counsel, Barbara Jordan Building, 1601 Congress Avenue, Austin, Texas 78701-1408

## VII.    STATUTE OF LIMITATIONS

In federal court, the statute of limitations for refiling a case depends significantly on the underlying claims and how previous litigation concluded. For 42 U.S.C. § 1983 claims in Texas, federal courts generally apply the State's two-year personal injury statute of limitations.

Regarding the *Plaintiff*'s specific arguments on accrual and the impact of *Plaintiff*'s previous filings:

**(a)    ACCRUAL AND ONGOING FRAUD**

- **The Discovery Rule:** Generally, a claim "accrues" when the *Plaintiff* knows or has reason to know of the injury which is the basis of the action. If new fraudulent acts are occurring … such as the ongoing misrepresentation of *Plaintiff*'s legal status or the systematic filing of fraudulent documents in court … each new act can potentially trigger a new accrual period for that specific injury.
- **Continuing Violation Doctrine:** This doctrine applies if the conduct is part of a continuing pattern rather than an isolated incident. The *Plaintiff* has established that the TMLIRP's fraud is a continuous, ongoing scheme, the limitations period may not begin to run until the conduct ceases.

**(b)    IMPACT OF PREVIOUS LITIGATION**

- **Tolling during Pendency:** Under the Texas "Savings Statute" [Tex. Civ. Prac. & Rem. Code Ann. § 16.064 (West 2015)], the statute of limitations may be tolled if a case is dismissed for lack of jurisdiction, provided the refiling occurs in a proper court within 60 days. However, this typically does not apply if the dismissal was "with prejudice" or for **intentional disregard of jurisdictional rules**.
- **Equitable Tolling:** Federal courts may apply equitable tolling if a *Plaintiff* has been actively misled by the *Defendant* about the cause of action or has been prevented from asserting their rights in some extraordinary way. The *Plaintiff*'s assertion that the TMLIRP engaged in a "fraud scheme" to secure a vexatious litigant designation could

serve as a basis for equitable tolling, as the fraud itself prevented a fair adjudication of the original claims.

**(c)     STATEMENT ON LIMITATIONS**

This action is **timely filed** as the claims involves a continuing course of fraudulent conduct by the TMLIRP. Each subsequent fraudulent act, including the mischaracterization of municipal liens and the fraudulent procurement of a vexatious litigant designation, constitutes a new accrual of the claim. Furthermore, the limitations period should be equitably tolled because the *Defendants'* concerted fraud scheme intentionally obstructed the *Plaintiff*'s ability to seek redress in previous forums. The refiling in the MIDLAND-ODESSA DIVISION is a continuation of the original pursuit of justice, necessitated by the discovery of systemic fraud that rendered previous proceedings voidable.

## VIII.   CONSTITUTIONAL CHALLENGE TO STATE STATUTES

- **Tex. Loc. Gov't Code § 172.014 (West 2025):** Challenge on grounds that it unconstitutionally exempts risk pools from insurance regulation, violating the *Supremacy Clause* (vis-à-vis the *McCarran-Ferguson Act*), *Equal Protection*, and *Due Process*.
- **Tex. Cons. Art. XI, § 9 & Tex. Prop. Code Ann. § 43.002:** Challenging the exemption of municipal property from forced sale as an unconstitutional impairment of contracts under the U.S. Const. Art. I, § 10.
- **Tex. Civ. Prac. & Rem. Code Ann. § 114.001:** Challenging limitations on the enforceability of contractual agreements against governmental entities as a violation of the *Contract Clause*.
- **Tex. Civ. Prac. & Rem. Code ch. 11:**

## IX.     ENFORCEMENT OF CIVIL RIGHTS AND CONTRACT CLAIMS

- **The Main Contract Case:** Detail the breach of the TREC *Unimproved Property Contract* (UPC) by the CITY OF SAN MARCOS regarding two discharged liens.
- ***Affidavit of Reservation of Rights* (ARR):** Formed as an adhesion contract through notice and the City's acquiescence.  Functions as a performance contract with predetermined compensatory damages ($250,000 per violation).
- **42 U.S.C. § 1983 Claims:** Framing the ARR as a mechanism to deter civil rights violations and asserting that the City waived immunity by entering into the contract.
- **TMLIRP's Role:** Detailing TMLIRP's subrogation and the alleged fraud scheme involving claims of sovereign immunity and mischaracterizing liens as special assessments to avoid liability.

## X.     THE SUBROGATION RELATIONSHIP AND OPERATIONAL ROLE OF TMLIRP

1. **The Core Municipal Obligation:** The underlying operational breaches, specifically the failure to formally release the discharged property liens referenced in Section IX, were originally initiated by the City of San Marcos, a political subdivision of the State of Texas.
2. **The Risk Pool Framework:** At all times relevant to this action, the City of San Marcos was a member entity of the Defendant, Texas Municipal League Intergovernmental Risk Pool (TMLIRP). Pursuant to Chapter 172 of the Texas Local Government Code, TMLIRP acts as the operational, administrative, and financial representative for its member municipalities concerning liability and property claims.
3. **Establishment of the Liquidated Debt:** Through the administrative process detailed herein, including the issuance of the Administrative Remedy Requested (ARR) and the Notice of Non-Response and Binding On-Law Ledger (NNBOL), the underlying contractual and administrative liability became a liquidated, final debt binding upon the City of San Marcos.
4. **Operational Standing via Subrogation:** By virtue of the operational subrogation agreements, contracts, and risk-pooling frameworks existing between the City of San Marcos and TMLIRP, TMLIRP has legally stepped into the shoes of the municipality regarding the administration, defense, and final settlement of these specific lien encumbrances.
5. **Direct Action Standing:** Because the underlying liability has been established and formalized through the self-executing administrative record without a timely challenge or cure by the member municipality, Plaintiff possesses direct standing to sue TMLIRP as the subrogated real party in interest under Texas law and the Federal Rules of Civil Procedure.

## XI.     BACKGROUND

The *Plaintiff* had purchased a vacant lot located at 803 Gravel Street on Thursday, May 1, 2014 from the *Hays County Trustee* (Trustee). The lot had come under the Trustee's ownership via a credit bid at a property tax foreclosure sale held Tuesday, January 6, 2004. Tex. Tax Code § 33.54(c)[12] established full title to the Trustee and successor [*Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 523 (Tex. App. 2015)[13]]. Meaning that all liens had been discharged by

---

12  Tex. Tax Code § 33.54.  LIMITATION ON ACTIONS RELATING TO PROPERTY SOLD FOR TAXES.  (a) Except as provided by Subsection (b), an action relating to the title to property may not be maintained against the purchaser of the property at a tax sale unless the action is commenced: … (c)  When actions are barred by this section, the purchaser at the tax sale or the **purchaser's successor in interest has full title to the property**, precluding all other claims.

13  "Because the risk of potential claims against property purchased at a tax sale might prevent or hinder prospective buyers from participating in tax sales, the Texas Legislature has reduced that risk by providing for full and clear title to those who purchase property at tax sales. See Tex. Tax Code Ann. §§ 33.54(c), 34.08(b). With greater certainty about the strength of the title they acquire, those who are risk-averse have more incentive to purchase property at tax sales." *Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 523 (Tex. App. 2015).

the conveyance of the property. Tex. Tax Code § 34.08(b)[14] prohibits the collection of any liens placed on the property prior to the property tax sale.

The *Plaintiff* had entered into a TEXAS REAL ESTATE COMMISSION, *Unimproved Property Contract* (Form ID: 9-15) (TREC UPC) on Sunday, January 30, 2022 to sell the property and it was set to close on Wednesday, February 23, 2022. Unbeknownst to the *Plaintiff* there were two liens filed by the CITY OF SAN MARCOS (City) associated with Guadalupe Camacho's ownership of the property, No. 1117-754 dated Monday, November 28, 1994 and No. 1668376 dated Monday, May 15, 2000, that had not been released as **required** by Tex. Tax Code § 34.08(b) and Tex. Tax Code § 34.08(c). In accordance with UPC §§ 9.B.(4) and 12.A.(1)(a), CORRIDOR TITLE COMPANY (Title company) was required to pay the liens. Both the Title company and *Plaintiff* contacted the City to obtain a release of the liens prior to closing. The *Plaintiff* had also provided the City with a copy of the *Affidavit of Reservation of Rights UCC § 1.308* (ARR), instrument number 19006671 in the official public records of Hays County, Texas.

The ARR can **only be used as a counterclaim** pursuant to Tex. R. Civ. P. 97(a). Consequently, having started out as a *Defendant* in a common law contract settlement, Tex. Civ. Prac. & Rem. Code ch. 11 can not be applied to the *Plaintiff*.

## XII.    THE UNDERLYING CONTRACTUAL DISPUTE AND ADMINISTRATIVE LIABILITIES

Nonetheless, the City had failed to release the liens prior to closing. By **entering the UPC** as a **beneficiary** the City had **waived sovereign immunity** (Tex. Loc. Gov't Code Ann. §

---

14  Tex. Tax Code § 34.08. CHALLENGE TO VALIDITY OF TAX SALE. … (b)  A person may not commence an action challenging the validity of a tax sale after the time set forth in Section 33.54(a)(1) or (2), as applicable to the property, against a subsequent purchaser for value who acquired the property in reliance on the tax sale.  The purchaser may conclusively presume that the tax sale was valid and shall have full title to the property free and clear of the right, title, and interest of any person that arose before the tax sale, subject only to recorded restrictive covenants and valid easements of record set forth in Section 34.01(n) and subject to applicable rights of redemption.

271.152[15] and the common law[16] … they don't have sovereign immunity[17]) and the ARR was **accepted by performance (notice and acquiescence)**. For the ARR to be an enforceable common law contract there had to be an offer to contract, acceptance, consideration, and no defenses to formation. The ARR is a _Self-Executing Unilateral/Implied-in-Law Hybrid Contract in the Event of a Deprivation of Reserved Rights_. What this means is there was an unilateral offer to contract to anyone willing to deny the _Plaintiff_'s **equal protections under the law**, **rights to make and enforce contracts**, or **rights to due process of law** via enforcement of contract terms that the _Plaintiff_ did not enter knowingly, voluntarily, and intentionally. The ARR establishes a fee of $250,000.00 per incident [… offer to contract and establishment of a claim pursuant to the _Civil Rights Act of 1964_ (42 U.S.C. § 1983) with predetermined **compensatory damages**].

The ARR is formed when the someone compels performance on a contract term without first receiving **accord and satisfaction** (… acceptance). There was consideration, the ARR is a bargained-for agreement because both parties are giving up something of value in exchange for something of value, which creates a legal obligation between the parties.

The City **could have claimed accord and satisfaction** if _Plaintiff_ had not filed an ARR and not signed the closing documents ALL RIGHTS RESERVED, Texas _Business and Commerce Code_ § 1.308. Accord and satisfaction is a legal doctrine that occurs when two parties agree to settle a dispute by discharging an existing obligation with a new performance.

---

15   Texas _Local Government Code_ § 271.152.  WAIVER OF IMMUNITY TO SUIT FOR CERTAIN CLAIMS.  A local governmental entity that is authorized by statute or the constitution to enter into a contract and that **enters into a contract** subject to this subchapter **waives sovereign immunity** to suit for the purpose of adjudicating a **claim for breach of the contract**, subject to the terms and conditions of this subchapter.

16   "in the contract context, a **governmental entity waives immunity from liability by entering into a contract**, because it binds itself like any other party to the terms of the agreement." _Tooke_, 197 S.W.3d at 332.

17   _Alden v. Maine_, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2D 636 (1999), clarifies that a state's **sovereign immunity does not shield lesser entities**, such as **municipal corporations**, from liability. Additionally, the Eleventh Amendment, as established in _Moor v. County of Alameda_, 411 U.S. 693 (1973), does not automatically protect political subdivisions of the state from liability. The impetus behind a claim to sovereign immunity is to protect the State's treasury accounts. If the State's treasury accounts are not at risk, the entity does not have sovereign immunity. The CITY OF SAN MARCOS has separate bank accounts from the State.

In this case, the City could have argued that the payment of the liens by the Title company constituted accord and satisfaction, **even though the liens were not valid**.

However, the *Plaintiff*'s ARR **prevented** the City from **asserting accord and satisfaction**. The ARR is a unilateral contract that states that the *Offeror* (*Plaintiff*) reserves all rights against the *Offeree* (the City) in the event that the *Offeree* compels performance on a contract term without first receiving accord and satisfaction. The ARR also includes an unambiguous waiver of all defenses, which means that the City **cannot raise any legal defenses** to the *Plaintiff*'s claim.

Therefore, the City's failure to release the liens before closing constituted a breach of contract, and Mr. Watson is **entitled to recover damages** under the ARR. This is the second reason why Tex. Civ. Prac. & Rem. Code ch. 11 can not be applied to *Plaintiff*, The *Plaintiff* has a legitimate claim against the City and this fact has been admitted by the City returning the stolen property. Pursuant to Tex. R. Civ. P. 96, the *Plaintiff*'s counterclaim **may not be discontinued** upon return of his property.

## XIII.   THE CASE AGAINST TEXAS STATE UNIVERSITY

### (a)     FACTUAL BACKGROUND AND CONCRETE INJURY-IN-FACT

TEXAS STATE UNIVERSITY is properly joined as an *Ancillary Claim Defendant* to establish the *Plaintiff*'s standing to challenge the constitutionality of Tex. Cons. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002.

On a prior occasion at approximately 8:30 PM, Plaintiff was lawfully parked in his truck inside *Aquarena Springs Park* in San Marcos, Texas, utilizing his computer while observing local wildlife. Although the public park maintains explicit operating hours from 6:00 AM to 11:00 PM … granting the public "effective consent" to occupy the premises … officers from the TEXAS STATE UNIVERSITY POLICE DEPARTMENT approached *Plaintiff* and threatened him with

criminal trespass under Tex. Penal Code Ann. § 30.05 if he did not immediately vacate the property.

Because entering or remaining in a public park during designated open hours does not constitute criminal trespass under Texas law, *Plaintiff* sent an administrative cease-and-desist notice to the *Chief of Police*. This notice formally advised the University that its officers were actively violating his constitutional rights and that continued non-consensual contact would trigger liabilities under a Self-Executing Contract/Security Agreement in the Event of a Violation of Rights, pursuant to:

- *Terry v. Ohio*, 392 U.S. 1 (1968);
- *Brown v. Texas*, 443 U.S. 47 (1979); and
- 42 U.S.C. § 1983.

Despite receiving this explicit notice, University police officers harassed *Plaintiff* on at least four subsequent occasions. Following these severe breaches, *Plaintiff* issued a formal administrative demand for payment of the predetermined contract damages. Upon the University's refusal to settle the debt, *Plaintiff* initiated strict non-judicial foreclosure proceedings against three specific commercial real estate assets held by the University: a non-affiliated leased restaurant, a small parking lot, and a residential parcel. *Plaintiff* subsequently acquired title to these properties via a credit bid at a public foreclosure sale.

**(b)     LEGAL INJURY AND THE WEAPONIZATION OF  Tex. Cons. Art. XI, § 9**

Prior to the final execution of the foreclosure sale, the *Attorney General of Texas* intervened on behalf of the University, securing a *Temporary Restraining Order*. In subsequent enforcement proceedings, the *Assistant Attorney General* asserted that the properties were entirely insulated from foreclosure, attachment, or execution by virtue of Tex. Cons. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002.

In response, *Plaintiff* presented clear, binding UNITED STATES SUPREME COURT precedent establishing that a state cannot use its internal statutory or constitutional exemptions to retroactively retrogress or obliterate vested contractual remedies:

> "A **constitution of a State** is in this case **admitted to be a 'law'**, within the meaning of that clause of the Constitution of the United States, which ordains that 'no State shall pass any law impairing the obligation of contracts.'" *Railroad Co. v. McClure*, 77 U.S. (10 Wall.) 511, 515 (1870).

The HAYS COUNTY DISTRICT COURT explicitly disregarded this supreme law, effectively overturning the governing framework of *Railroad Co. v. McClure* to insulate TEXAS STATE UNIVERSITY from its commercial defaults. This unconstitutional overreach was subsequently affirmed by the THIRD COURT OF APPEALS, and the SUPREME COURT OF TEXAS denied a *Petition for Review*/*Writ of Mandamus*. As a direct result of these void judicial determinations, the *Hays County Clerk* has refused to record *Plaintiff*'s legally acquired foreclosure deeds.

**(c)     CLEAR ARTICLE III STANDING AND REDRESSABILITY**

Plaintiff satisfies all constitutional requirements for *Article III* standing against TEXAS STATE UNIVERSITY:

1.  **Injury-in-Fact:** Plaintiff has suffered a concrete, particularized, and actual economic injury. He has been blocked from recording validly acquired commercial property deeds and has had his self-executing contract remedies retroactively extinguished by a state actor under color of law.
2.  **Causality:** The injury is directly traceable to the University's deployment of Tex. Cons. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002. These provisions are being utilized as an unconstitutional mechanism to clear a state contractor's ledger of valid commercial defaults.
3.  **Redressability:** A favorable ruling from this Court declaring Tex. Cons. Art. XI, § 9 facially unconstitutional under the federal Contract Clause will completely redress Plaintiff's injuries. It will permanently invalidate the state-level exemptions used to block the enforcement of his security interests, allowing him to compel the recording of his foreclosure deeds and claim title to the subject properties.

Furthermore, the systemic failure of the state courts to act as a neutral arbiter … choosing instead to insulate the University by actively striking down federal supreme precedent … violates the core tenets of procedural due process. "It is a fundamental right of a party to

have a neutral and detached judge preside over the judicial proceedings." *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972).  Because the state judiciary has demonstrated a total collapse of neutrality in order to shield this state university, federal court intervention under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 is mandated to preserve the rule of law and enforce Plaintiff's uncapped default damages.

### XIV.   APPLICABILITY OF THE GOVERNMENT-AS-CONTRACTOR DOCTRINE AND RELEVANT WAIVERS OF IMMUNITY

**(a)     NATURE OF THE DOCTRINE**

The *Plaintiff* asserts the "*Government as a Contractor Doctrine*" as a foundational principle governing the enforcement of the Self-Executing Contract/Security Agreement (NNBOL) and the *Affidavit of Reservation of Rights* (ARR). Under this well-established doctrine, when a governmental entity, state agency, or political subdivision steps off its sovereign pedestal to engage in commercial transactions, execute contracts, or interface with private citizens regarding property and contract rights, it divests itself of its sovereign character. In the constitutional and commercial arena, the government cannot simultaneously act as a sovereign ruler and an ordinary contracting peer; when it enters the marketplace, it binds itself to the exact same rules of law, notice, and acquiescence that govern any private corporation.

**(b)     OPERATIONAL WAIVER OF SOVEREIGN AND JUDICIAL IMMUNITY**

The impetus behind any claim to sovereign immunity is strictly limited to the structural protection of the State's central treasury accounts. However, under the *Government as a Contractor Doctrine*:

- A local or state governmental entity that is authorized to enter into an agreement, and does so, waives its immunity to suit for the purpose of adjudicating a breach of that contract.
- When municipal or state actors deliberately violate federally protected contract rights under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, or engage in tortious interference with a

valid Texas Real Estate Commission (TREC) Unimproved Property Contract, they forfeit their immunity from liability.

- By forcing the *Plaintiff* to perform under clouded titles or unconstitutional statutory exemptions without first obtaining accord and satisfaction, the *Defendants* acted as mere private tortfeasors and commercial default contract participants.

**(c)     BINDING EFFECT OF NOTICE AND ACQUIESCENCE**

Because the government in its capacity as a contractor is bound like any other party, it is fully subject to the rules of commercial notice and contract formation. The Counterclaim Plaintiff provided explicit administrative Notice via the ARR and NNBOL. By failing to object, failing to release invalid liens, and continuing to enforce predatory, unregulated risk pool mechanics, the Defendants accepted the terms of these unilateral/implied-in-fact hybrid instruments through performance and acquiescence.

Consequently, under the Government as a Contractor Doctrine, the state actors have no legal authority to hide behind statutory shields like Tex. Civ. Prac. & Rem. Code ch. 11 or Tex. Loc. Gov't Code § 172.014 (West 2025). Having breached their obligations, they are legally bound by the predetermined compensatory damages and are fully subject to strict non-judicial foreclosure against their commercial and deposit accounts to satisfy the default.

**(d)     UNAMBIGUOUS WAIVER OF ALL DEFENSES**

The ARR has an **unambiguous waiver of all defenses** (… "All are without excuse."), and the contract was entered into with full knowledge of its' consequences (… "Wherefore all have undeniable knowledge."). Consequently, the ARR is a fully enforceable contract and protected from impairment [42 U.S.C. §1981(c)[18]] by both the U.S. and Texas constitutions. The unambiguous waiver of all defenses in the ARR means that the *Offeree,* in this case a *Tortfeasor,* has voluntarily and knowingly given up all of their legal rights to defend themselves

---

18   42 U.S.C. § 1981(c) Protection against impairment. The rights protected by this section are **protected against impairment** by nongovernmental discrimination and impairment under color of State law.

against a claim by the *Offeror*. This includes all defenses that the *Tortfeasor* may have under common law, statutory law, or the terms of the ARR itself.

The fact that the ARR is self-executing and acceptance is by performance (does not require a signature … notice and acquiescence) means that the *Tortfeasor*'s acceptance of the ARR is implied by their actions. For example, if the *Tortfeasor* forces the *Offerer* to perform a contract term that was not agreed to, they will be considered to have accepted the ARR's terms, including the waiver of all defenses and the claim may not be discontinued (Tex. R. Civ. P. 96).

The unambiguous waiver of all defenses in the ARR is particularly significant because it prevents the *Tortfeasor* from raising any defenses to the *Offeror*'s claim, even if the *Tortfeasor* has a valid defense. This means that the *Offeror* is **guaranteed to succeed** in their claim against the *Tortfeasor*. Consequently, any hearing lacks jurisdiction over any defensive arguments and is **REQUIRED** to enter a *Judgment by Default*.

## XV.     THE LITIGATION HISTORY BEFORE THE THIRD COURT OF APPEALS AND DUE PROCESS IMPLICATIONS

### (a)     THE THIRD COURT OF APPEALS' MANDATED DUTY TO TRANSFER TO THE FIFTEENTH COURT OF APPEALS

The Plaintiff's underlying appeal and subsequent Motion for Rehearing fundamentally involved a civil action challenging the constitutionality of a state statute … specifically, Tex. Loc. Gov't Code § 172.014 (West 2025) … alongside intertwined breach of contract claims against state and municipal entities. Under the legislative framework establishing the newly formed Supreme Court-mandated 15th COA, the 3rd COA was fully aware that exclusive exclusive jurisdiction over constitutional challenges to state statutes and complex state-agency litigation was shifting to the 15th COA. Consequently, the 3rd COA was operationally and legally required to transfer the pending appeal and *Motion for Rehearing* to the 15th COA.

To intentionally evade this divestiture of authority, the 3rd COA rushed to issue a denial of the *Plaintiff*'s *Motion for Rehearing* exactly one day prior to the date the 15th COA officially acquired its lawful jurisdiction over such matters. This precise, systematic timing demonstrates a deliberate effort to block the lawful transfer of the case and avoid neutral judicial review.

**(b)     THE CONTRADICTORY APPLICATION OF SERAFINE V. CRUMP**

The 3rd COA's hasty denial directly contradicted binding SUPREME COURT OF TEXAS precedent. Just one day prior to the issuance of the mandate in *Serafine v. Crump*, No. 23-0272 (Tex. June 21, 2024), the very same Justice authored an entirely contradictory opinion. The Third Court of Appeals was legally required to comply with the constitutional and procedural guardrails affirmed in *Serafine*. By subverting the structural holding of *Serafine* on the eve of its mandate, and simultaneously extinguishing the case to prevent its mandatory transfer to the 15th COA, the panel acted outside the scope of its lawful judicial authority.

**(c)     THE NON-NEGOTIABLE BILL OF LADING (NNBOL) AS AN ADHESION CONTRACT TO THE OATH OF OFFICE**

The legal documents and the *Motion for Rehearing* submitted by the *Plaintiff* were strictly covered by a *Non-Negotiable Bill of Lading* (NNBOL), which operates legally as a receipt, title document, and binding commercial contract. The NNBOL does not seek to create a novel obligation; rather, it takes the existing constitutional duties that the Justices of the THIRD COURT OF APPEALS were already bound to perform by their solemn *Oath of Office* and their strict adherence to the Supreme Court mandate in *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).

Under the well-established *Government as a Contractor Doctrine*, when state actors step outside their lawful constitutional boundaries, ignore procedural mandates, and engage in

arbitrary commercial or administrative injuries, they strip themselves of sovereign immunity and operate merely as private commercial participants.

The NNBOL functions as an *Adhesion Contract* to the *Oath of Office*, perfected and formed through explicit administrative Notice and subsequent Acquiescence. Because the 3rd COA chose to act in direct violation of federally and state-protected contract rights , failed to comply with *Serafine*, and deliberately intercepted a mandatory jurisdictional transfer, the self-executing provisions of the NNBOL were triggered.

**(d)     CONVERSION INTO A PERFECTED SECURITY AGREEMENT AND AUTHORIZED FORECLOSURE**

By failing to perform their explicit constitutional obligations, the *Defendants'* actions effectively accepted the terms of the commercial notice. This failure converted the NNBOL into a fully mature, *Self-Executing Contract and Security Agreement in the Event of a Violation of Rights*.

- Pursuant to the terms established under the commercial notice, all legal defenses to this enforcement have been unambiguously and voluntarily waived ("All are without excuse" / "Wherefore all have undeniable knowledge").
- This Self-Executing Security Agreement stands perfected against the State's treasury accounts.
- Because the Defendants are in absolute default , this Court is required to recognize the validity of the commercial contract and enforce strict, non-judicial foreclosure against the designated treasury accounts to satisfy the predetermined compensatory damages.

## XVI.   STANDING

The *Plaintiff* has standing to bring these constitutional challenges, civil rights claims, and supplemental contract actions. *Plaintiff* satisfies the Article III standing requirements as his direct economic and constitutional injuries are a consequence of the *Defendants'* unlawful actions and the enforcement of the challenged state provisions.

Furthermore, this Court possesses supplemental jurisdiction under 28 U.S.C. § 1367 over the intertwined state-law contract claims, including the enforcement of the ARR and the self-executing security agreements, because they arise from the exact same common nucleus of operative facts as the federal constitutional questions.

**(a)     INJURY-IN-FACT**

Plaintiff has suffered concrete, particularized, and actual economic and constitutional injuries.

- **Deprivation of Property and Contract Rights:** *Plaintiff* was directly harmed by the CITY OF SAN MARCOS' tortious interference with his existing contract and its initial failure to release invalid municipal liens on his property prior to closing. This forced a clouded title on property where all previous liens had already been legally discharged by a prior tax foreclosure sale under Tex. Tax Code § 33.54(c) and Tex. Tax Code § 34.08(b).
- **Financial Loss from Unfair Claims Practices:** *Plaintiff* suffered severe financial loss due to the TEXAS MUNICIPAL LEAGUE INTERGOVERNMENTAL RISK POOL's (TMLIRP) subsequent refusal to pay the resulting claim. TMLIRP engaged in unfair claim settlement practices, withholding predetermined compensatory damages of $250,000.00 per incident established under the ARR … a self-executing contract accepted by the City through notice and acquiescence.
- **Systemic Impairment of Contract Obligations:** *Plaintiff*'s constitutional right to secure and enforce contracts has been systematically impaired by the deployment of Tex. Cons. Art. XI, § 9, Tex. Loc. Gov't Code § 172.014 (West 2025), Tex. Civ. Prac. & Rem. Code Ann. § 114.001, and Tex. Prop. Code Ann. § 43.002.
- **Weaponization of the Vexatious Litigant Statute:** Plaintiff suffered a severe deprivation of due process when the state courts weaponized Tex. Civ. Prac. & Rem. Code ch. 11 to declare him a "vexatious litigant". This discriminatory designation was used as a pretext to unconstitutionally expand the law, quash his legitimate compulsory counterclaims under Tex. R. Civ. P. 97(a), and insulate the *Defendants* from lawful liability.

**(b)     CAUSALITY**

There is a direct, traceable connection between the *Plaintiff*'s injuries and the challenged statutory provisions administered or relied upon by the *Defendants*.

- **The Statutory Exemption Bar:** TMLIRP's refusal to pay the valid ARR contract claim was directly enabled by Tex. Loc. Gov't Code § 172.014 (West 2025). By unconstitutionally exempting risk pools from the Texas *Insurance Code* and TEXAS DEPARTMENT OF INSURANCE (TDI) regulation, the statute allows TMLIRP an unfair competitive advantage and permits it to systematically engage in predatory, anticompetitive, and unfair claim settlement practices without administrative oversight.

- **Preclusion of Legal Remedies:** The state courts relied on the unconstitutional mechanics of Tex. Civ. Prac. & Rem. Code ch. 11 to strip *Plaintiff* of his fundamental right to access a neutral third-party judiciary. This statutory framework directly caused the suppression of his federally protected rights under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, allowing state actors to bypass compulsory counterclaims and intentionally misapply the law.

**(c)     REDRESSIBILITY**

A favorable decision from this Court will fully remedy and redress the Plaintiff's ongoing economic and constitutional injuries.

- **Constitutional Declarations and Injunctions:** A final judgment declaring Tex. Loc. Gov't Code § 172.014 (West 2025) unconstitutional will permanently enjoin TMLIRP from relying on its purported regulatory exemption, forcing accountability for its unfair claim settlement practices.
- **Restoration of Judicial Access:** A federal declaratory judgment or injunction finding that the "vexatious litigant" designation without evidentiary support violated *Plaintiff*'s federal constitutional rights will compel the state to remove or reconsider the designation, restoring his unimpeded access to the courts.
- **Enforcement of Contractual Damages:** Utilizing supplemental jurisdiction, this Court can directly order TMLIRP and the associated *Defendants* to pay (or forfeit property) the outstanding economic and compensatory damages dictated by self-executing agreements. Furthermore, a favorable ruling will validate the enforcement of the perfected *Non-Negotiable Bills of Lading* and self-executing security agreements, permitting nonjudicial foreclosure against the State's treasury accounts[19] to satisfy the default.

### XVII.  COUNT I: DECLARATORY JUDGMENT — Facial and As-Applied Unconstitutionality of Tex. Loc. Gov't Code § 172.014 (West 2025)

Tex. Loc. Gov't Code § 172.014 (West 2025) is unconstitutional on the grounds that it is in violation of the Equal Protection[20], Due Process[21], Commerce[22], and Supremacy Clauses[23] of the United States Constitution. It is also a violation of the Texas Constitution's Separation of Powers Doctrine and in violation of both the *Sherman Antitrust Act* and the *Clayton Antitrust Act*.

---

19  "A claim against a municipal official in her official capacity is **tantamount to a suit against the municipal entity**." *Will v. Michigan Department of State* Police [491 U.S. 58 (1989)].
20  U.S. Const. amend. XIV, § 1.
21  U.S. Const. amend. V. and U.S. Const. amend. XIV, § 1.
22  U.S. Const. art. I, § 8, cl. 3
23  U.S. Const. art. VI, cl. 2

**(a)     VIOLATION OF EQUAL PROTECTION CLAUSE**

Tex. Loc. Gov't Code § 172.014 (West 2025) by exempting TMLIRP from state insurance regulation arguably creates an unfair advantage for TMLIRP compared to its competitors who are subject to such regulation. This could be seen as a violation of the equal protection clause[24] of the *Fourteenth Amendment,* which guarantees equal treatment under the law.

**(b)     VIOLATION OF DUE PROCESS CLAUSE**

The exemption from state insurance regulation may also deprive TMLIRP's policyholders of the right to have their claims adjudicated by a neutral third party, potentially violating the *Due Process Clause*[25] of the *Fifth* and *Fourteenth Amendments*.

**(c)     VIOLATION OF COMMERCE CLAUSE**

Tex. Loc. Gov't Code § 172.014 (West 2025) could be seen as interfering with Congress's power to regulate interstate commerce, particularly in the insurance industry, which is a major part of interstate commerce. This could be considered a violation of the *Commerce Clause*[26] of the *Constitution*.

**(d)     VIOLATION OF SUPREMACY CLAUSE**

The *McCarran-Ferguson Act* exempts the business of insurance from federal regulation only to the extent that it is regulated by state law. Tex. Loc. Gov't Code § 172.014 (West 2025)'s exemption from state regulation can be argued to conflict with this federal law, violating the Supremacy Clause[27] of the Constitution.

**(e)     VIOLATION OF CONSTITUTION'S SEPARATION OF POWERS**

The Constitution's separation of powers doctrine prohibits the legislature from exercising judicial power. By denying TMLIRP policyholders access to a neutral third party for claims

---

24  U.S. Const. amend. XIV, § 1.
25  U.S. Const. amend. V. and U.S. Const. amend. XIV, § 1.
26  U.S. Const. art. I, § 8, cl. 3
27  U.S. Const. art. VI, cl. 2

adjudication, which is arguably a judicial function, Tex. Loc. Gov't Code § 172.014 (West 2025) might be deemed a violation of this doctrine.

**(f)     VIOLATION OF SHERMAN ANTITRUST ACT**

TMLIRP's exemption from state insurance regulation could theoretically allow it to engage in anticompetitive practices like price fixing and collusion, without facing the same level of scrutiny as its competitors. This raises concerns about potential violations of the *Sherman Antitrust Act*.

**(g)     VIOLATION CLAYTON ANTITRUST ACT**

Similarly, the exemption could enable TMLIRP to pursue mergers and acquisitions that would reduce competition in the market, potentially violating the *Clayton Antitrust Act*.

**XVIII. COUNT II: DECLARATORY JUDGMENT — Violation of the U.S. Contract Clause (Tex. Const. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002)**

**(a)     THE CONSTITUTIONAL PROHIBITION AGAINST CONTRACTUAL IMPAIRMENTS**

The *Plaintiff* brings this facial and as-applied constitutional challenge pursuant to the *Contract Clause* of the *United States Constitution*, which mandates that "No State shall... pass any... Law impairing the Obligation of Contracts." This foundational federal restriction is designed to ensure commercial predictability and to prevent states from using their sovereign legislative power to retroactively immunize themselves or their political subdivisions from valid, pre-existing contractual debts, security interests, and financial obligations.

**(b)     THE STATUTORY MECHANISM OF IMPAIRMENT**

The *Defendants* rely upon Tex. Cons. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002 as absolute shields to insulate municipal corporations, state entities, and intergovernmental risk pools from forced sales, attachments, and executions. Tex. Cons. Art. XI, § 9 purports to exempt all public property held by counties, cities, and towns exclusively for public purposes from

forced sale and taxation. Similarly, Tex. Prop. Code Ann. § 43.002 codifies this restriction by declaring that the property of a political subdivision is exempt from execution or forced sale to satisfy a judgment.

While these provisions were originally intended to protect essential civic infrastructure from disruption, the Defendants have systematically weaponized them to retroactively eviscerate valid, perfected commercial liabilities. When deployed against a matured, self-executing contract or security agreement, these state laws cease to function as protective measures and instead become an unconstitutional state-sanctioned mechanism to completely strip private contracting parties of their bargained-for remedies.

**(c)      FACIAL AND AS-APPLIED VIOLATION OF THE U.S. CONTRACT CLAUSE**

The application of Tex. Cons. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002 to bar the enforcement of the *Affidavit of Reservation of Rights* (ARR) and the *Non-Negotiable Bills of Lading* (NNBOL) constitutes a direct, substantial impairment of a contract under federal law for the following reasons:

- **Eradication of the Remedy Eliminates the Obligation:** Under long-standing United States Supreme Court precedent, the "obligation" of a contract includes the legal remedies available for its enforcement. By unconstitutionally barring any execution or forced sale against municipal or risk-pool assets, the state completely obliterates the remedy for a breach, effectively rendering the contract null, void, and toothless at the whim of the state actor.
- **No Legitimate or Significant Public Purpose:** While the state may reasonably regulate remedies, it cannot completely immunize its subdivisions from commercial breaches simply to protect its treasury accounts when the underlying entity operates in a private, commercial capacity. The City of San Marcos and TMLIRP engage in private commercial transactions and maintain separate deposit accounts detached from the central state treasury. Utilizing these statutes to insulate an entity that has already explicitly waived its defenses constitutes a severe, unconstitutional overreach.
- **A State Cannot Contract and Simultaneously Legalize a Breach:** Under the Government as a Contractor Doctrine, once a governmental entity binds itself to a contract, it is bound by the same commercial rules as any private peer. The legislature cannot enact, nor can courts enforce, blanket exemptions like Tex. Cons. Art. XI, § 9 or Tex. Prop. Code Ann. § 43.002 to retroactively clear a municipality's ledger of valid commercial defaults.

**(d)     REQUIREMENT FOR FEDERAL INTERVENTION AND DEFAULT ENFORCEMENT**

Because the *United States Constitution* is the supreme Law of the Land, any state constitutional provision or statutory enactment that directly impairs the obligation of contracts must yield under the *Supremacy Clause*. Therefore, to the extent that Tex. Cons. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002 are used to quash the *Plaintiff*'s contract rights, block the enforcement of the ARR, or prevent the non-judicial foreclosure of the perfected NNBOL security interests against the default accounts, they are unconstitutional, void, and unenforceable. This Court possesses full jurisdiction to declare these provisions unconstitutional and enforce the compensatory damages dictated by the underlying self-executing agreements.

## XIX.   COUNT III: DECLARATORY JUDGMENT — Unconstitutional Impairment of Remedies under  Tex. Civ. Prac. & Rem. Code Ann. § 114.001

**(a)     THE ABSOLUTE FEDERAL PROHIBITION AGAINST STATE-SANCTIONED REMEDIAL EVASION**

The *Plaintiff* brings this facial and as-applied constitutional challenge against Tex. Civ. Prac. & Rem. Code Ann. § 114.001 pursuant to the *Contract Clause* of the *United States Constitution*, which strictly mandates that "No State shall... pass any... Law impairing the Obligation of Contracts."  Under long-standing constitutional jurisprudence, the "obligation" of a contract is inextricably bound to the legal remedies available to enforce it. If a state statute acts to fundamentally cap, restrict, or eliminate the bargained-for remedies and damages available to a contracting party in a valid breach of contract claim against a state actor, it effectively eviscerates the remedy and unconstitutionally impairs the underlying contractual obligation itself.

**(b)     THE STATUTORY MECHANICS OF Tex. Civ. Prac. & Rem. Code Ann. § 114.001'S REMEDIAL IMPAIRMENT**

The *Defendants* rely upon Tex. Civ. Prac. & Rem. Code Ann. § 114.001 as a selective, sovereign shield to limit their financial exposure and insulate state-level entities … specifically state universities and administrative agencies … from the full scope of their lawful contract liabilities. While Tex. Civ. Prac. & Rem. Code Ann. § 114.001 purports to waive sovereign immunity for certain written breach of contract claims against state agencies, it simultaneously imposes severe, statutory restrictions on the types and amounts of damages a private contracting party can recover. Specifically, it explicitly excludes recovery for consequential damages, punitive damages, and predefined contractual penalties or liquidated settlement frameworks.

While these provisions are framed as protections for public funds, the *Defendants* have weaponized them to retroactively eviscerate valid, perfected commercial liabilities. When deployed against a matured, self-executing contract or a performance contract with predetermined compensatory damages … such as the ARR ... Tex. Civ. Prac. & Rem. Code Ann. § 114.001 ceases to function as a reasonable regulatory cap and instead becomes an unconstitutional state-sanctioned mechanism to strip private contracting parties of their vested remedies.

**(c)     FACIAL AND AS-APPLIED VIOLATIONS OF THE U.S. CONTRACT CLAUSE**

The application of Tex. Civ. Prac. & Rem. Code Ann. § 114.001 to restrict or block the full enforcement of the ARR and the accompanying self-executing contract rights constitutes a direct, substantial impairment under the federal Contract Clause for the following reasons:

- **The Legislative Alteration of Vested Remedies:** The ARR functions as a valid, self-executing unilateral/implied-in-fact performance contract with predetermined compensatory damages ($250,000 per violation), triggered by the intentional breach of a Texas Real Estate Commission (TREC) Unimproved Property Contract. By using Tex. Civ. Prac. & Rem. Code Ann. § 114.001 to retroactively cap or exclude these explicit, agreed-upon commercial damages under color of state law, the state unconstitutionally tears up a perfected commercial obligation and immunizes its own state entities from their full contractual default.
- **Destruction of the Government as a Contractor Doctrine:** Under the Government as a Contractor Doctrine, once a state entity like Texas State University enters into the

marketplace and the contract context, it binds itself like any other party to the terms of the agreement. The Texas Legislature cannot use Tex. Civ. Prac. & Rem. Code Ann. § 114.001 to rewrite the terms of a default after a breach has occurred, nor can it create a protective statutory safe-harbor that allows state actors to accept commercial performance while legally invalidating the contracting party's agreed-upon remedies.

- **State-Sanctioned Breach of Faith:** Because the Counterclaim Plaintiff's actions arose out of a common-law contract dispute and the bad-faith maintenance of invalid liens, the subsequent deployment of Tex. Civ. Prac. & Rem. Code Ann. § 114.001 to truncate available remedies functions as a mechanism to protect an ongoing fraud scheme. It deprives the private citizen of full redress while leaving the state contractor's unlawful evasion entirely insulated from the true economic consequences of its actions.

**(d)     FEDERAL SUPREMACY AND THE REQUIREMENT FOR UNCAPPED DEFAULT ENFORCEMENT**

Because the United States Constitution is the supreme Law of the Land, any state statutory framework that is weaponized to impair contractual obligations or prevent the full enforcement of federally protected contract rights under 42 U.S.C. § 1981 must yield to federal law. Tex. Civ. Prac. & Rem. Code Ann. § 114.001 cannot be used to limit liabilities or protect state actors who have entered into binding commercial relationships. Consequently, to the extent that Tex. Civ. Prac. & Rem. Code Ann. § 114.001 is used to quash or reduce the Counterclaim Plaintiff's contract rights and predetermined damages under the ARR, it is unconstitutionally void and unenforceable. This Court possesses full jurisdiction to disregard these statutory limits, exercise its supplemental jurisdiction, and order the associated Defendants to pay the outstanding economic and compensatory damages dictated by the underlying self-executing agreements.

**XX.     COUNT IV: DEPRIVATION OF CIVIL RIGHTS (42 U.S.C. § 1983) — As-Applied Violation of Due Process via  Tex. Civ. Prac. & Rem. Code ch. 11**

**(a)     THE ABSOLUTE FEDERAL PROHIBITION AGAINST STATE-SANCTIONED REMEDIAL EVASION**

The Counterclaim Plaintiff brings this constitutional challenge against Tex. Civ. Prac. & Rem. Code ch. 11  pursuant to the Contract Clause of the United States Constitution, which strictly mandates that "No State shall... pass any... Law impairing the Obligation of Contracts."

Under long-standing constitutional jurisprudence, the "obligation" of a contract is inextricably bound to the legal remedies available to enforce it. If a state statute acts to completely strip a contracting party of their right to assert a valid breach of contract claim or maintain a compulsory counterclaim, it effectively eviscerates the remedy and unconstitutionally impairs the underlying contractual obligation itself.

**(b)      THE STATUTORY MECHANICS OF THE REMEDIAL IMPAIRMENT**

The *Defendants* have weaponized the "vexatious litigant" framework of Tex. Civ. Prac. & Rem. Code ch. 11 as an absolute shield to insulate municipal and state-level entities from lawful contract liability. Tex. Civ. Prac. & Rem. Code ch. 11 empowers state courts to restrict a litigant's access to the judiciary by requiring pre-filing permissions or security bonds based on a review of prior litigation history.  While ostensibly designed to manage court dockets, the statute has been unconstitutionally expanded and applied to a *Defendant* who has filed a mandatory, compulsory counterclaim arising out of an express contract dispute. By deploying Tex. Civ. Prac. & Rem. Code ch. 11 to quash a legitimate compulsory counterclaim under Tex. R. Civ. P. 97(a) or Tex. R. Civ. P. 96, the state courts do not merely regulate court procedures; they actively extinguish the only procedural vehicle a citizen possesses to hold a defaulting state contractor accountable.

**(c)      FACIAL AND AS-APPLIED VIOLATIONS OF THE U.S. CONTRACT CLAUSE**

The application of Tex. Civ. Prac. & Rem. Code ch. 11 to quash the *Plaintiff*'s enforcement of the ARR and the NNBOL constitutes a direct, substantial impairment under the federal *Contract Clause* for the following reasons:

- **The Retroactive Eradication of Vested Rights:** The ARR functions as a valid, self-executing unilateral/implied-in-fact performance contract with predetermined compensatory damages ($250,000 per violation), triggered by the City of San Marcos' intentional breach of a TEXAS REAL ESTATE COMMISSION (TREC) *Unimproved Property Contract*. By using Tex. Civ. Prac. & Rem. Code ch. 11 to retroactively brand the Counterclaim Plaintiff a "vexatious litigant" and dismiss his counterclaims without evaluating the current case's merits , the state unconstitutionally tears up a perfected

commercial security interest and immunizes its own political subdivisions from explicit contractual defaults.

- **Destruction of the Government as a Contractor Doctrine:** Under the *Government as a Contractor Doctrine*, once the CITY OF SAN MARCOS and TMLIRP entered the commercial contract context, they bound themselves to the same laws of notice, acquiescence, and liability that govern any private peer. The Texas Legislature cannot use Tex. Civ. Prac. & Rem. Code ch. 11 to create a separate, protective class of legal participants that allows state actors to accept commercial benefits, execute a breach, and then strip the private contracting party of their right to be heard on the merits.
- **Bypassing Compulsory Protections:** Because the *Plaintiff*'s actions began as a defensive response to a common-law contract settlement and the City's refusal to release legally discharged property tax liens, the subsequent deployment of Tex. Civ. Prac. & Rem. Code ch. 11 to suppress a compulsory counterclaim functions as an unconstitutional state-sanctioned mechanism to bypass the Anti-Subrogation Rule and state anti-indemnity laws. It strips the private citizen of judicial access while leaving the state contractor's unlawful breach entirely unredressed.

### (d)     VIOLATION OF THE DUE PROCESS CLAUSE

Tex. Civ. Prac. & Rem. Code ch. 11 can be argued to violate due process by depriving individuals of their fundamental right to access the courts and have their claims adjudicated by a neutral third party.

- **Procedural Due Process:** The designation of a "vexatious litigant" often occurs without proper evidentiary findings as required by Tex. Civ. Prac. & Rem. Code § 11.054. In *Plaintiff*'s own proceedings, it was noted that the trial court failed to make these findings because no evidence was presented.
- **Neutrality of the Judiciary:** Due process requires a neutral and detached judge. Using Tex. Civ. Prac. & Rem. Code ch. 11 as a pretext to quash legitimate counterclaims, as alleged in Hays County Cause No. 23-2549, undermines this neutrality and effectively denies the litigant the right to be heard on the merits.

### (e)     VIOLATION OF THE EQUAL PROTECTION CLAUSE

Tex. Civ. Prac. & Rem. Code ch. 11 creates a discriminatory classification that treats *pro se* litigants differently from those represented by counsel, thereby violating the guarantee of equal treatment under the law.

- **Unfair Application:** The statute is specifically aimed at *pro se Plaintiffs*. Applying it to a *Defendant* who has filed a compulsory counterclaim ... as occurred in *Plaintiff*'s case … is an unconstitutional expansion of the law that unfairly targets a specific class of legal participants.

**(f)     VIOLATION OF THE SUPREMACY CLAUSE**

The application of Tex. Civ. Prac. & Rem. Code ch. 11 to block claims arising under federal law or protected by federal statutes is unconstitutional under the *Supremacy Clause*.

- **Impairment of Federal Rights:** The *U.S. Constitution* and federal laws like 42 U.S.C. § 1981 and 42 U.S.C. § 1983 protect the right to make and enforce contracts. To the extent Tex. Civ. Prac. & Rem. Code ch. 11 is used by state courts to prevent the enforcement of these federally protected rights, the state statute must yield to federal law.

**(g)     VIOLATION OF SEPARATION OF POWERS DOCTRINE**

The legislature's attempt to restrict judicial access through Tex. Civ. Prac. & Rem. Code ch. 11 arguably infringes upon the judicial branch's power to adjudicate claims.

- **Judicial Independence:** By allowing trial courts to declare litigants vexatious based on past litigation history rather than the current case's merits, the legislature has mandated a process that can be used to bypass legitimate judicial functions, such as the adjudication of compulsory counterclaims under Tex. R. Civ. P. 97(a).

**(h)     SUMMARY FOR FEDERAL COURT REVIEW**

Under 28 U.S.C. § 1331, federal courts have jurisdiction to review these constitutional claims. While a federal judge cannot directly "remove" a name from the state list, they can find that the designation violated federal constitutional rights and issue an injunction or declaratory judgment compelling the state to reconsider or remove the designation on constitutional grounds.

## XXI.   COUNT V: CIVIL RICO (18 U.S.C. § 1964) — Pattern of Fraudulent Administrative Activity

The *Plaintiff* argues that the *Racketeering Influenced and Corrupt Organization Act of 1970* (RICO) applies to this claim with TMLIRP being the corrupt organization and the Texas court system being racketeering influenced.

**(a)     TMLIRP AS A CORRUPT ENTERPRISE**

TMLIRP operates as a "corrupt organization" by utilizing an unconstitutional exemption from the *Texas Insurance Code* and TEXAS DEPARTMENT OF INSURANCE (TDI) regulation granted by Tex. Loc. Gov't Code § 172.014 (West 2025). This exemption allows TMLIRP to

systematically engage in unfair claim settlement practices, which are otherwise prohibited by

Tex. Ins. Code § 542.003 and Tex. Ins. Code § 541.003. Specifically:

- **Predicate Acts:** TMLIRP engages in a pattern of criminal acts for the economic benefit of its risk pool members, including tampering with government records, official oppression, and obstruction of justice.
- **Economic Fraud:** TMLIRP uses its deregulated status to usurp accountability for civil rights violations under 42 U.S.C. § 1983, effectively operating a taxpayer-funded racketeering scheme that denies fair treatment to claimants.

**(b)     THE COURTS AS A RACKETEERING INFLUENCED**

The Texas court system, specifically the HAYS COUNTY DISTRICT COURT and the THIRD

COURT OF APPEALS, acts as "racketeering influenced" by shielding TMLIRP from lawful liability

and disregarding established constitutional protections:

- **Intentional Misapplication of Law:** The courts have knowingly accepted fraudulent evidence and argued topics not on the docket … such as sovereign immunity in contract cases where it does not apply … to issue void judgments and silence legitimate claims.
- **Vexatious Litigant Weaponization:** The courts have weaponized the vexatious litigant statute (Tex. Civ. Prac. & Rem. Code ch. 11) to disenfranchise defendants with compulsory counterclaims, such as Mark Watson, despite evidence of merit and the return of funds by the City of San Marcos (an implicit admission of liability).
- **Collusion with TMLIRP:** By affirming void declarations and **disrupting federal removal** processes, the courts have actively participated in a criminal conspiracy with TMLIRP to prevent default judgments and federal oversight.

**(c)     JURISDICTION AND REMEDIES**

Pursuant to 18 U.S.C. § 1964(a) and 18 U.S.C. § 1964(c), this Court has civil jurisdiction

to restrain these racketeering activities. Because the state courts and TMLIRP have acted outside

their jurisdiction and *Oaths of Office*, they have waived judicial and sovereign immunity.

- **Damages:** The *Plaintiff* is entitled to threefold damages under 18 U.S.C. § 1964(c) for injuries resulting from this racketeering activity.
- **Self-Executing Contract/Security Agreement Enforcement:** Due to these constitutional violations, legal documents submitted by the *Plaintiff* were covered by *Non-Negotiable Bills of Lading* that have converted into *Self-Executing Contracts/Security Agreements in the Event of a Violation of Rights*, perfected against the State's treasury accounts and authorizing strict non-judicial foreclosure against the State's treasury accounts on account of default.

## XXII.  RELIEF SOUGHT

WHEREFORE, Compulsory Counterclaim Plaintiff Mark Joseph Watson respectfully prays that this Court enter judgment in his favor and against Counterclaim Defendants, granting the following legal, equitable, and declaratory relief:

**(a)     DECLARATORY JUDGMENT**

1. **Unconstitutionality of Tex. Loc. Gov't Code § 172.014 (West 2025):** A final judicial declaration that Tex. Loc. Gov't Code § 172.014 (West 2025) is unconstitutional both facially and as-applied, as it violates the *Equal Protection*, *Due Process, Commerce*, and *Supremacy Clauses* of the *United States Constitution*, as well as the *Texas Constitution*'s *Separation of Powers Doctrine*.
2. **Unconstitutionality of Property Protection Exemptions:** A declaration that Tex. Cons. Art. XI, § 9 and Tex. Prop. Code Ann. § 43.002 are unconstitutional under the federal Contract Clause when weaponized to retroactively obliterate vested contractual remedies and immunize political subdivisions from valid commercial defaults.
3. **Unconstitutionality of Damage Caps:** A declaration that Tex. Civ. Prac. & Rem. Code Ann. § 114.001 unconstitutionally impairs contractual obligations by statutorily restricting and capping bargained-for remedies against state agencies engaging in the commercial marketplace.
4. **Unconstitutionality of the Vexatious Litigant Framework:** A declaration that Tex. Civ. Prac. & Rem. Code ch. 11, as applied to a defendant asserting a mandatory, compulsory counterclaim, violates Procedural Due Process, Equal Protection, and the Supremacy Clause.

**(b)     INJUNCTIVE RELIEF**

1. **Permanent Injunction Against Vexatious Litigant Orders:** A permanent injunction enjoining the enforcement of the state court "vexatious litigant" designation, thereby restoring *Plaintiff*'s unimpeded, fundamental right of access to a neutral judiciary.
2. **Preservation of Judicial Neutrality:** Federal intervention to preserve the rule of law and remedy the procedural collapse of neutrality exhibited by the state judiciary in shielding state contractors from commercial default.

    "It is a fundamental right of a party to have a neutral and detached judge preside over the judicial proceedings." *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 61-62 (1972).

**(c)     COMPENSATORY DAMAGES & ENFORCEMENT OF SECURITY INTERESTS**

1. **Contractual Debt Enforcement:** An order enforcing the mature, self-executing provisions of the Affidavit of Reservation of Rights (ARR) and Non-Negotiable Bills of Lading (NNBOL), which stand perfected against the default accounts.
2. **Award of Damages:** Pre-determined compensatory damages of $250,000.00 per individual violation triggered by the Defendants' bad-faith conduct , alongside accrued

interest, and threefold treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO) and DTPA where applicable.

**(d)    ENFORCEMENT VIA THE TEXAS COMPTROLLER VENDOR HOLD SYSTEM**

1. **Mandated Comptroller Enforcement:** An order directed to Ancillary Claim Defendant, the Texas Comptroller of Public Accounts, requiring the Comptroller to fully enforce the Self-Executing Contract and Security Agreements (NNBOL) against the defaulting political subdivisions and state agencies.
2. **Utilization of State Vendor Hold:** An explicit directive compelling the Texas Comptroller to place the defaulting political subdivisions, state entities, and intergovernmental risk pools on the state "Vendor Hold" system pursuant to Texas Government Code § 403.055. The Comptroller shall withhold any state warrants, distributions, reimbursements, or payments due to the respective units of local government and state entities until all outstanding contractual defaults, security interests, and predetermined compensatory damages owed to the Plaintiff are completely satisfied and discharged.

Plaintiff further prays for such other and further relief, both at law and in equity, to which he may show himself justly entitled.

## XXIII. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Compulsory Counterclaim Plaintiff Mark Joseph Watson respectfully submits that the statutory exemptions and immunities relied upon by Counterclaim Defendants are unconstitutional, void, and operationally destructive to vested contractual rights under the supreme Law of the Land.

By entering into the commercial marketplace, executing contracts, and maintaining invalid municipal liens in bad faith, the state and municipal actors divested themselves of sovereign immunity and became subject to the governing rules of private contracting peers. The Defendants have fully accepted the terms of the Affidavit of Reservation of Rights (ARR) and Non-Negotiable Bills of Lading (NNBOL) through administrative notice, commercial performance, and subsequent acquiescence, thereby unambiguously waiving all legal defenses.

Because the state judiciary has exhibited a systemic collapse of required neutrality to insulate state entities from their commercial defaults, federal intervention under 28 U.S.C. §

1331 and 28 U.S.C. § 1367 is necessary to uphold due process, honor valid security agreements,

and preserve the rule of law.

Accordingly, *Plaintiff* Mark Joseph Watson emphasizes his absolute entitlement to the

requested relief and respectfully prays that this Court enter a final default judgment in his favor:

- Declaring the challenged Texas statutory frameworks and constitutional exemptions unconstitutional both facially and as-applied;
- Permanently enjoining the state court "vexatious litigant" framework weaponized to suppress mandatory, compulsory counterclaims;
- Enforcing the mature, self-executing provisions of the underlying security agreements and awarding all contractually predetermined compensatory and treble civil RICO damages; and
- Directing the Texas Comptroller of Public Accounts to place the defaulting political subdivisions and state entities on the state "Vendor Hold" system pursuant to Texas Government Code § 403.055 until all outstanding contractual defaults and security interests are completely satisfied and discharged.

*Plaintiff* prays for such other and further relief, both at law and in equity, to which he may

show himself justly entitled.

"I **declare under penalty of perjury** under the laws of the UNITED STATES OF AMERICA (28 U.S.C. § 1746) that the foregoing factual allegations are true and correct. Executed on Thursday, May 21, 2026."

ALL RIGHTS RESERVED,
Texas *Business and Commerce Code* § 1-308,
Autographed on Thursday, May 21, 2026.

MARK JOSEPH WATSON, *Plaintiff.*

## APPENDIX A: JUDICIAL NOTICE OF LEGAL WRONGS SUFFERED BY THE PLAINTIFF

1. TORTIOUS INTERFERENCE AND FAILURE TO RELEASE LIENS
   ◦ **Clouded Property Title:** The Plaintiff asserts that the City of San Marcos committed a legal wrong by failing to release two invalid municipal property liens prior to a scheduled real estate closing.  Prior Discharge of Liens: He notes that these liens had already been legally discharged under Texas Tax Code provisions following a prior tax foreclosure sale, making the collection or maintenance of those liens unlawful.
2. VIOLATIONS OF CONSTITUTIONAL RIGHTS
   ◦ **Impairment of Contracts:** The Plaintiff argues that state actors "weaponized" Texas property and civil remedy statutes to retroactively obliterate and extinguish his vested, contractually protected remedies. He claims this directly violates the Contract Clause of the U.S. Constitution.  Deprivation of Due Process: He alleges that the Texas state courts exhibited a total collapse of required judicial neutrality. Specifically, he claims they unconstitutionally expanded and weaponized the state's "vexatious litigant" framework to suppress his right to assert mandatory, compulsory counterclaims.
3. FINANCIAL AND ECONOMIC LOSS
   ◦ **Breach of "Self-Executing" Agreements:** The Plaintiff states he suffered severe financial harm when the Texas Municipal League Intergovernmental Risk Pool (TMLIRP) and other entities refused to pay predetermined compensatory damages (totaling $250,000 per violation). These damages were allegedly established under his Affidavit of Reservation of Rights (ARR) and Non-Negotiable Bills of Lading (NNBOL)—instruments he claims the defendants accepted through notice and acquiescence.
   ◦ **Blocked Property Deeds:** He alleges an economic injury-in-fact because he has been blocked from recording validly acquired commercial foreclosure deeds following strict non-judicial foreclosure actions he initiated against Texas State University assets.
4. RACKETEERING AND ANTI-COMPETITIVE BEHAVIOR
   ◦ **Civil RICO Violations:** The complaint asserts that TMLIRP utilizes an unconstitutional statutory exemption to systematically engage in predatory, anti-competitive behavior and unfair claim settlement practices. He alleges this framework amounts to a taxpayer-funded racketeering scheme that denies claimants fair treatment.

**Note on Legal Status:** Please note that these represent the formal allegations and claims detailed by the *Plaintiff* within his complaint. In a federal lawsuit, whether these assertions constitute a proven legal wrong that entitles the *Plaintiff* to relief is a matter to be adjudicated and determined by the presiding federal judge.

**APPENDIX B: CASE HISTORY, CLERK'S RECORD, AND REPORTER'S RECORD**

The case started out in HAYS COUNTY DISTRICT COURT, 207th Judicial District **Tuesday, March 1, 2022**. Below is a list of courts the case was docketed in and Internet links to the docket sheet if applicable (Clerk's and Reporter's Records **DOWNLOAD**). All of these cases were filed *pro se*. When reviewing these docket sheets please make note the the CITY OF SAN MARCOS has **admitted an obvious breach of contract**, unambiguously waived all defenses, and admitted that they received a dismissal of the lawsuit via **FRAUD** in violation of Tex. R. Civ. P. 96.

1. No. 22-0424 MARK JOSEPH WATSON v. CITY OF SAN MARCOS
   HAYS COUNTY DISTRICT COURT, 207th Judicial District
   Docket Sheet: https://public.co.hays.tx.us/Search.aspx?ID=200
   Clerk's Record Request: recordrequest@txcourts.onmicrosoft.com (md5sum)
   Reporter's Record Request: ruby.castilleja@co.hays.tx.us (md5sum)
   a27f186d47b242141257161709b1c3f8  **22-307-CV 062422 CLERKS RECORD.pdf**
   8095f39340427045bf118da5827d08eb  **22-307-CV 072222 supp. clerk's record.pdf**
   326016ae939af10f8d9d4c7971f269dc  **BHWatson22-05-24.pdf**
2. No. 03-22-00307-CV MARK JOSEPH WATSON v. CITY OF SAN MARCOS
   THIRD COURT OF APPEALS
   Docket Sheet: https://search.txcourts.gov/Case.aspx?cn=03-22-00307-CV&coa=coa03
3. No. 23-0235 In Re MARK JOSEPH WATSON
   SUPREME COURT OF TEXAS – *Petition for Writ of Mandamus*
   Docket Sheet: https://search.txcourts.gov/Case.aspx?cn=23-0235&coa=cossup
4. No. 23-0421 MARK JOSEPH WATSON v. CITY OF SAN MARCOS
   SUPREME COURT OF TEXAS – *Petition for Review*
   Docket Sheet: https://search.txcourts.gov/Case.aspx?cn=23-0421&coa=cossup
5. No. 23-2549 MARK JOSEPH WATSON v. CITY OF SAN MARCOS
   HAYS COUNTY DISTRICT COURT, 248th Judicial District
   Docket Sheet: https://public.co.hays.tx.us/Search.aspx?ID=200
   Clerk's Record Request: recordrequest@txcourts.onmicrosoft.com (md5sum)
   Reporter's Record Request: brenna.demoss@gmail.com (md5sum)
   1bfba91ab667220407b478e9763f9ade  **23-768-CV 111623 Clerks Record.pdf**
   46b1a2d02ac136c95de512e3f40cf6a4  **23-768-CV 121123 supp. clerk's record.pdf**
   98ed424c3423da0acfa68b4250970ca5  **23-768-CV 122023 RR Vol 1 of 3.pdf**
   30a1f390c649a7385fc61506f902ac55  **23-768-CV 122023 RR Vol 2 of 3.pdf**
   211ba9873fd233e01caffbce9b51b350  **23-768-CV 122023 RR Vol 3 of 3.pdf**
6. No. 03-23-00768-CV MARK JOSEPH WATSON v. CITY OF SAN MARCOS
   THIRD COURT OF APPEALS – *Interlocutory Appeal of Vexatious Litigant Declaration*
   Docket Sheet: https://search.txcourts.gov/Case.aspx?cn=03-23-00768-CV&coa=coa03

It's clear that docketing the case in the UNITED STATES DISTRICT COURT for the *Western District of Texas*, MIDLAND-ODESSA DIVISION is required to preserve the rule of law.

**APPENDIX A: THE UNDERLYING CONTRACT AND LIEN DOCUMENTS**

1117 754

CERTIFICATION OF CHARGES CONSTITUTING LIEN
FOR THE DEMOLITION OF AN UNSAFE STRUCTURE

DOC# 371125

**Date:** November 28, 1994

**Property:** 803 Gravel Street, Lot 1, Block 2 of the Dan McKie First Addition to the City of San Marcos.

**Property Owner(s):** See Attached Exhibit "A" incorporated herein for all purposes.

**Lien Claimant:** City of San Marcos, Texas, 630 E. Hopkins San Marcos, TX 78666

**Lien Amount:** $1,260.00

The Lien Claimant has given notice to the Property Owner(s) to abate a nuisance caused by an unsafe structure upon the Property in accordance with Section 214.001 of the Texas Local Government Code and Chapter 5 Article VIII of the San Marcos Code of Ordinances; and

After the time expired for compliance by the Property Owner(s) with the Order requiring abatement, the City of San Marcos incurred expenses in the Lien Amount in demolishing the building.

The Lien Claimant claims a lien for these expenses in the Lien Amount in accordance with Section 5-106(d) of the City of San Marcos Code of Ordinances together with interest at the rate of ten percent (10%) per annum from the date hereof until paid.

William L. White
Director of Finance

THE STATE OF TEXAS
COUNTY OF HAYS

BEFORE ME, the undersigned authority, on this day personally appeared William H. White, Director of Finance for the City of San Marcos, Texas and stated that he executed the above instrument for the purposes therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 28th day of November, 1994.

NOTARY PUBLIC - STATE OF TEXAS

KIM DOHERTY
Notary Public, State of Texas
My Commission Expires
AUG. 1, 1998

**RETURN TO:**
CITY OF SAN MARCOS
ATTN: Legal Dept.
630 East Hopkins Street
San Marcos, TX 78666

OFFICIAL PUBLIC RECORDS
Hays County, Texas

EXHIBIT "A"        1117 755

(1)  Guadalupe Camacho
     4320 Beta
     San Diego, CA   92113

(2)  Maria Sanchez-Camacho
     600 South Logan
     Bryan, TX   77801

(3)  Florinda Camacho Hernandez
     607 W. 29th
     Bryan, TX   77801

(4)  Juan Camacho, Jr.
     600 S. Logan
     Bryan, TX   77801

(5)  Soledad Camacho
     752 Gravel Street
     San Marcos, TX   78666

(6)  Rebecca Camacho
     916 Sycamore Street
     San Marcos, TX   78666

(7)  Ramon Camacho
     734 Valley Street, Apt. 1
     San Marcos, TX 78666

STATE OF TEXAS
COUNTY OF HAYS
     I hereby certify that this instrument was FILED on
the date and at the time stamped hereon by me and was duly
RECORDED, in the Volume and Page of the named RECORDS
of Hays County, Texas, as stamped hereon by me.

DEC 7  1994

COUNTY CLERK
HAYS COUNTY, TEXAS

FILED FOR RECORD
DOC# 371125 $11
12-07-1994 02:35:48
RONNIE DANNELLEY
HAYS COUNTY

Doc 00010924   Bk OPR   Vol 1668   Pg 376

# CERTIFICATION OF CHARGES CONSTITUTING LIEN
# FOR THE CLEARING OF TRASH FROM THE PREMISES

**DATE:** May _15_, 2000

**PROPERTY:**   All of Lot1, Block 2, Dan McKie First Addition, San Marcos, Hays County, Texas;

**PROPERTY OWNER(S):**   Guadalupe Comacho
4320 Beta
San Diego, California 92113

**LIEN CLAIMANT:**   City of San Marcos
630 East Hopkins Street
San Marcos, Texas 78666

**LIEN AMOUNT:**   $ 247.50

The Lien Claimant has given notice to the Property Owner(s) to abate the nuisance caused by property that has not been cleared of weeds, rubbish, brush and stagnant water in accordance with Section 34.078 of the San Marcos Code of Ordinances; and

After the time expired for compliance by the Property Owner(s) with the Notification Letter, the City of San Marcos incurred expenses in the Lien Amount in clearing the property of the subject weeds, rubbish, brush and stagnant water.

The Lien Claimant claims a lien for these expenses in the Lien Amount in accordance with Section 34.080 of the City of San Marcos Code of Ordinances, together with Administrative Fees and interest at the rate of ten percent (10%) per annum from the date hereof until paid.

William L. White
Director of Finance

THE STATE OF TEXAS      §
                        §
COUNTY OF HAYS          §

BEFORE ME, the undersigned authority, on this __12th__ day of May, 2000, personally appeared WILLIAM L. WHITE, Director of Finance for the City of San Marcos, Texas and stated that he executed the above instrument for the purposes therein expressed and in the capacity therein stated.

Notary Stamp

Notary Public - State of Texas

CHRISTINA M. TUREAUD
MY COMMISSION EXPIRES
September 16, 2001

RETURN TO:

CITY OF SAN MARCOS
ATTN: Legal Dept.
630 East Hopkins Street
San Marcos, TX 78666

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS
On: May 15,2000 at 08:48A

Document Number:        00010924

Amount                     9.00

Lee Carlisle
County Clerk
By
Rose Robinson, Deputy
Hays County

## AFFIDAVIT OF RESERVATION OF RIGHTS UCC § 1-308

PUBLIC
THIS IS A PUBLIC COMMUNICATION TO ALL
Notice to agents is notice to principles
Notice to principles is Notice to Agents
Applications to all successors and assigns
All are without excuse

**Mark-Joseph: Watson**, *sui juris*
All rights reserved UCC § 1-308/1-207
c/o 1334 N Interstate 35 TRLR 36
San Marcos, Texas a republic near [78666-7120]
Phone: [(214) 659-1265]
Non-domestic without the United States

Let it be known to all that I, **Mark-Joseph: Watson** explicitly reserves all of my rights. See UCC § 1-308 which was formally UCC § 1-207.

"UCC § 1-308. Performance or Acceptance Under Reservation of Rights. (a) A party that with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest," or the like are sufficient."

I retain all of my rights and liberties at all times and in all places, *nunc pro tunc* (now for then) from the time of my birth and forevermore. Further, I retain my rights not to be compelled to perform under any contract or commercial agreement that I did not enter knowingly, voluntarily and intentionally. And furthermore, I do not accept the liability of the compelled benefit of any unrevealed contract or commercial agreement. I am not ever subject to silent contracts and have never knowingly or willingly contracted away my sovereignty.

Further, I am not a United States citizen or a 14th amendment citizen. I am a State Citizen of the republic and reject any attempted expatriation. See 15 united States statute at large, July 27th, 1868 also known as the expatriation statute

Violation fee of my liberty is **$250,000 per incident or per 15 minutes or any part thereof**. Wherefore all have undeniable knowledge.

## AFFIDAVIT

Affiant, **Mark-Joseph: Watson**, *sui juris*, a Citizen of Texas in its *dejure* capacity as a republic and as one of the several states of the union created by the constitution for the united States of America 1777/1789. This incidentally makes me an American national and a common man of the Sovereign People, does swear and affirm that Affiant has scribed and read the foregoing facts, and in accordance with the best of Affiant's firsthand knowledge and conviction, such are true, correct, complete, and not misleading, the truth, the whole truth, and nothing but the truth.

WITNESS my hand this 4th day of March, A.D. 2019.

AUTOGRAPHED on Monday, March 4, 2019.

Autographed By: **Mark-Joseph: Watson**, *sui juris*

## ACKNOWLEDGMENT

County of Hays )
                ) *Scilicet*
State of Texas   )

SUBSCRIBED TO AND SWORN before me this 4th day of March, A.D. 2019, a Notary, that **Mark-Joseph: Watson**, personally appeared and known to me to be the man whose name subscribed to the within instrument and acknowledged to be the same.

Notary Public
My Commission expires 10·11 2020

GUADALUPE Z ALVARADO
Notary Public, State of Texas
My Comm. Exp. 10-11-2020
ID No. 12490557-6

*Affidavit of Reservation of Rights UCC § 1-308*    Page 1 of 1    Monday, March 4, 2019

Instrument Number: **202407111709**

## In the Third Court of Appeals

MARK JOSEPH WATSON,
*Appellant … Defendant,*
v.
Ms. Stephanie Rayes,
*Interim City Manager,*
CITY OF SAN MARCOS,
*Appellee … Counterclaim Defendant.*

**No. 03-23-00768-CV**
Trial Court
HAYS COUNTY DISTRICT COURT
428th Judicial District
No. 23-2549

**NON-NEGOTIABLE BILL OF LADING**
*Contract for the Carriage of Justice* and *Self-executing Contract/Automatically Perfected Security Agreement in the Event of a Violation of the Consignor's Constitutional Rights*

  This *Non-Negotiable Bill of Lading* (NNBOL) is **self-executing** and covers all legal documents filed by MARK JOSEPH WATSON (*Consignor/Secured Party*) (**STATEMENT OF ORIGIN**) and submitted to the THIRD COURT OF APPEALS (*Carrier*) on **Friday, July 12, 2024** for the purpose of delivery of **an order** (*Memorandum of Opinion*) to the STATE OF TEXAS' (*Consignee*) law enforcement agencies for the purpose of **recovering monetary damages** suffered by the *Consignor* due to the violation  ('under the color of state law') of *Consignor*'s constitutional rights to make and enforce contracts, equal protection under law, and rights to due process of law under 42 U.S.C. § 1983[1] and 42 U.S.C. § 1985(3)[2] (**STATEMENT OF DESTINATION**).

(1) The *Carrier* and *Consignee* are **fully knowledgeable** that the foregoing clearly articulated instructions to the *Carrier* are REQUIRED by the *Carrier*'s *Oath of Office* [Tex. Const., art. XVI, §1(a) "I, **NAME OF JUSTICE** (*Carrier*), do solemnly swear (or affirm), that I will **faithfully execute** the duties of the office of *Justice* for the THIRD

---

1  42 U.S.C. § 1983. **Civil action for deprivation of rights.** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ~~except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity~~ (**THIS COURT LACKS JURISDICTION TO AFFIRM THE VEXATIOUS LITIGANT DECLARATION OF THE CONSIGNOR. THEREFORE, WAIVES IMMUNITY WHEN AFFIRMING.**), injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

2  42 U.S.C. § 1985. Conspiracy to interfere with civil rights … **(3) Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; … in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an **action for the recovery of damages** occasioned by such injury or deprivation, against any one or more of the conspirators.

*Non-Negotiable Bill of Lading*          Page 1 of 11          Thursday, July 11, 2024

Instrument Number: **202407111709**

COURT OF APPEALS of the STATE OF TEXAS, and will to the best of my ability preserve, protect, and **defend the *Constitution* and laws** of the UNITED STATES and of this State, so help me God.”].

(2) The *Consignor* also has the **benefits and protections** of the Texas *Penal Code* and the *Carrier* and *Consignee* are **fully knowledgeable** that it is a **violation of this agreement** and the *Carrier*’s *Oath of Office* to not refer **common law** criminal charges (in the form of Texas *Penal Code* violations) to the appropriate law enforcement agencies;

(3) The *Carrier* and *Consignee* are **fully knowledgeable** that under Texas *Business and Commerce Code* § 7.104, the *Consignor* has title or ownership of the legal documents;

(4) The Carrier is **fully knowledgeable** that the *Carrier* [(a.k.a. appellate panel on behalf of the STATE OF TEXAS (*Consignee*)] is **liable** for the agreed or “declared value” of the legal documents and “ancillary claim” [49 U.S.C. § 80111(a)(1)[3]] through to the *Consignee* for a **violation of this agreement**, Texas *Business and Commerce Code* § 7.309[4] is **not applicable to this agreement**, and waives the *Consignee*’s rights to a hearing on the “ancillary claim”;

(5) The *Carrier* and *Consignee* are **fully knowledgeable** that violation of this agreement self-executes the security interest clause of this agreement making **Exhibit A** a *Self-executing Contract/Automatically Perfecting Security Agreement in the Event of Violation of Constitutionally Protected Rights or Adjudication Without Jurisdiction* (SA) with power of sale and right of strict non-judicial foreclosure;

(6) The *Carrier* and *Consignee* are **fully knowledgeable** that the SA is **automatically perfected**[5] because in the event of a violation of the *Consignor*’s constitutional rights, the *Consignor* becomes becomes the bank’s (*Texas Comptroller of Public Accounts*) customer with respect to the *Consignee*’s treasury accounts[6] via the SA.

(7) The *Carrier* and *Consignee* are **fully knowledgeable** that the SA is a lawful alternative to a lawsuit filed under the *Racketeering Influenced and Corrupt Organizations Act of 1970* (RICO) [18 U.S.C. § 1964(a)] and subject to threefold damages under [18 U.S.C. § 1964(c)], the *Civil Rights Act of 1964* [42 U.S.C. § 1983 and/or 42 U.S.C. § 1985(3)] and the Texas *Civil Practices and Remedies Code* § 73 against the *Consignee* (the *Carrier* is

---

3  49 U.S.C. 80111(a) GENERAL RULES. **-** A common carrier is liable for damages to a **person having title** to, or right to possession of, goods when **-** (1) the **carrier delivers the goods to a person not entitled to their possession** ...

4  Texas *Business and Commerce Code* § 7.309. DUTY OF CARE; CONTRACTUAL LIMITATION OF CARRIER'S LIABILITY. (a) A carrier that issues a bill of lading, whether negotiable or nonnegotiable, shall exercise the degree of care in relation to the goods which a reasonably careful person would exercise under similar circumstances. This subsection **does not affect** any statute, regulation, or rule of law that imposes liability upon a common carrier for damages not caused by its negligence. ...

5  Texas Business and Commerce Code § 9.104. CONTROL OF DEPOSIT ACCOUNT. (a) A secured party has control of a deposit account if: … (3) the secured party **becomes the bank's customer with respect to the deposit account**. (b) A secured party that has satisfied Subsection (a) has control, even if the debtor retains the right to direct the disposition of funds from the deposit account.

6  Texas Business and Commerce Code § 9.314. PERFECTION BY CONTROL. (a) A security interest in investment property, **deposit accounts**, letter-of-credit rights, virtual currencies, electronic chattel paper, or electronic documents may be **perfected by control** of the collateral under Section 7.106, 9.104, 9.105, 9.106, 9.107, or 9.1071. (b) A security interest in deposit accounts, electronic chattel paper, virtual currencies, letter-of-credit rights, or electronic documents is perfected by control under Section 7.106, **9.104**, 9.105, 9.107, or 9.1071 when the secured party obtains control and remains perfected by control only while the secured party retains control.

*Non-Negotiable Bill of Lading*          Page 2 of 11          Thursday, July 11, 2024

Instrument Number: **202407111709**

acting on behalf of the *Consignee*) and that the *Carrier* **unambiguously waives all defenses**.

"The provision of our statute which **prohibits common carriers from limiting their liability**, as it exists at common law, by stipulations in the bill of lading, is valid as applied to contracts for interstate transportation of property. Special charge stating the converse of this principle was correctly refused." *G.H. S.A. Ry. Co. v. Fales*, 33 Tex. Civ. App. 457 (Tex. Civ. App. 1903). "It can not be determined from this assignment, nor from the proposition and statement under it, what items claimed by appellees as baggage should, under appellant's contention, have been excluded. The court **did sustain the exception to some of the items**; for instance, 'specimens of gold quartz, **package of legal documents**, insurance papers, mining stocks, inventories, will, report of estate of deceased, family pictures, marriage certificate, etc., solid silverware and old coins.' As the items to which the **exception was not sustained** are not referred to either in the assignment, proposition, or statement under it, it is **not incumbent upon us to enumerate them**." *Id.* at 459.

## I.    TABLE OF CONTENTS

NON-NEGOTIABLE BILL OF LADING.................................................................................1
    I. TABLE OF CONTENTS............................................................................................3
    II. WAIVER OF SOVEREIGN IMMUNITY DEFENSE.............................................4
    III. UNAMBIGUOUS WAIVER OF ALL DEFENSES...............................................5
    IV. SECURITY INTEREST CLAUSE..........................................................................5
    V. TRUTH IN LENDING ACT, REGULATION Z NOTIFICATION..........................5
    VI. CLEARLY ARTICULATED AFFIRMATION OF HAVING RECEIVED THE LEGAL DOCUMENTS IN GOOD CONDITION.................................................................6
    VII. CLEARLY ARTICULATED INSTRUCTIONS TO THE CARRIER.....................7
    VIII. CLEARLY ARTICULATED DECLARATION OF THE VALUE OF THE LEGAL DOCUMENTS.........................................................................................................7
    IX. LOSS OF JUDICIAL IMMUNITY.......................................................................8
EXHIBIT A - SELF-EXECUTING CONTRACT/AUTOMATICALLY PERFECTING SECURITY AGREEMENT IN THE EVENT OF A VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS OR ADJUDICATING WITHOUT JURISDICTION (SA).....................9
    I. DEFAULT TERMS...............................................................................................10
    II. PAYMENT TERMS.............................................................................................10
    III. TERMS OF STRICT FORECLOSURE................................................................11
    IV. POWER OF ATTORNEY....................................................................................11
    V. RESERVATION OF RIGHTS...............................................................................11

Instrument Number: **202407111709**

## II.    WAIVER OF SOVEREIGN IMMUNITY DEFENSE

The *Carrier* and *Consignee* are fully knowledgeable of the fact that this *Non-Negotiable Bill of Lading* is being used for the purposes of waiving the sovereign immunity defense via the *Contract Clause* of the *U.S. Constitution* for the purpose of a civil rights claim under 42 U.S.C. § 1985 and 42 U.S.C. § 1986 in the event of a violation of the *Consignor*'s constitutional rights and understand the financial consequences of such a violation.

(1) 42 U.S.C. § 1981. **Equal rights under the law** ... (b) **"Make and enforce contracts" defined -** For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) **Protection against impairment -** The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

(2) The required elements of a *prima facie* case of employment discrimination are the same under Title VII and § 1981, which **guarantees equal rights to enforce contracts**. *Civil Rights Act of 1964*, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981. *Bryant v. Bell Atl. Maryland, Inc.,* 288 F.3d 124 (4th Cir. 2002);

(3) The SUPREME COURT OF TEXAS has stated that "in the contract context, a **governmental entity waives immunity from liability by entering into a contract**, because it binds itself like any other party to the terms of the agreement." *Tooke,* 197 S.W.3d at 332;

(4) "Held, that a subsequent act of the legislature levying taxes upon the bank to a greater amount, and upon a different principle, was in conflict with the constitution of the United States, as **impairing the obligation of a contract**." *Dodge v. Woolsey,* 59 U.S. 331, 332, 15 L. Ed. 401 (1855).

(5) "A constitution of a State is in this case admitted to be a 'law', within the meaning of that clause of the *Constitution of the United States*, which ordains that '**no State shall pass any law impairing the obligation of contracts**.'" *Railroad Company v. McClure,* 77 U.S. 511, (1870).

(6) "The prohibition in the *Constitution of the United States* against the passage of laws impairing the obligation of contracts **applies to the constitution as well as the laws of each state**." *New Orleans Gas Co. v. Louisiana Light Co.,* 115 U.S. 650 (1885).

(7) "Plaintiff in error invokes the jurisdiction of this court upon the ground that article 233 of the constitution of the state of Louisiana, which declared that the consolidated bonds of the state, held for the Agricultural and Mechanical College and the Louisiana Seminary fund, were **null and void**, was **repugnant to section 10, art. 1, of the constitution of the United States**, prohibiting states from passing **laws impairing the obligation of contracts**." *Bier v. McGehee,* 148 U.S. 137, 139, 13 S. Ct. 580, 580, 37 L. Ed. 397 (1893).

The *Carrier* and *Consignee* are **fully knowledgeable** that the above case law renders Article 11, Section 9 of the Texas *Constitution*, Texas *Civil Practice and Remedies Code* § 114, and Texas *Property Code* § 43.002 as unconstitutional under the *Contract Clause* of the *Constitution of the United States*.

Instrument Number: **202407111709**

### III.     UNAMBIGUOUS WAIVER OF ALL DEFENSES

Both the *Carrier* and the *Consignee* unambiguous waive of all defenses. Both the *Carrier* and the *Consignee* are fully knowledgeable it prevents either the *Carrier* or *Consignee* from raising any defenses to the *Consignor*'s enforcement of the SA, even if either the *Carrier* or *Consignee* have a **valid defense**. This means that the *Texas Comptroller of Public Accounts* is **REQUIRED** to comply with Texas *Business and Commerce Code* § 9-607(5)[7] or face first-degree felony charges for  **hindering a secured creditor** (Texas *Penal Code* § 32.33).

### IV.     SECURITY INTEREST CLAUSE

The legal documents of the *Consignor* serve as collateral in the amount of the **declared value** and **ancillary claim** for the *Self-Executing Contract/Automatically Perfected Security Agreement in the Event of a Violation of Constitutionally Protected Rights or Adjudication Without Jurisdiction* (SA) with power of sale and right of strict nonjudicial foreclosure. The SA is provided as **Exhibit A**.

### V.     TRUTH IN LENDING ACT, REGULATION Z NOTIFICATION

If the *Carrier* **can not** perform the *Carrier* instructions, the *Carrier* must rescind the PSA via **recusal and resignation** for a violation of the *Carrier's Oath of Office*. The *Carrier* is REQUIRED by the STATE OF TEXAS and Texans to abide by the *Oath of Office*. Absent a **recusal AND resignation** within three business days [12 C.F.R. § 1026.23(a)(3)(i)[8]] (**Wednesday, July 17, 2024** at 12:00 midnight), the *Carrier* is fully knowledgeable of the civil and criminal consequences of a violation of the *Consignor's* constitutionally protected rights and adjudication without jurisdiction is agreeing to the terms of the PSA [Texas *Business and Commerce Code* § 2.206(b)].

(1) "It is a fundamental right of a party to have a **neutral and detached judge** preside over the judicial proceedings." *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972).

(2) The *Fourteenth Amendment* to the *U.S. Constitution* guarantees the **right to due process and equal protection under the law**, which requires Justices of the THIRD COURT OF APPEALS to apply the law fairly and impartially to all parties in a case.

(3) The *Sixth Amendment* to the *U.S. Constitution* guarantees the right to a fair trial, which includes the right to an impartial judge. This means that a **judge must recuse themselves** from a case if they have a **personal bias** or conflict of interest that would prevent them from being fair and impartial.

---

7    Texas *Business and Commerce Code* § 9-607 COLLECTION AND ENFORCEMENT BY SECURED PARTY. (a) If so agreed, and in any event after default, a secured party: … (5) if it holds a security interest in a deposit account perfected by control under Section 9.104(a)(2) or (3), may instruct the bank to pay the balance of the deposit account to or for the benefit of the secured party.

8    12 C.F.R. § 1026.23 **Right of rescission**. (a) Consumer's right to rescind. … (3)(i) The consumer may exercise the **right to rescind until midnight of the third business day following consummation**, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. ...

Instrument Number: **202407111709**

## VI.    CLEARLY ARTICULATED AFFIRMATION OF HAVING RECEIVED THE LEGAL DOCUMENTS IN GOOD CONDITION

Both the *Carrier* and the *Consignee* agree that the:

(1) *Consignor* has clearly articulated in his legal documents an *injury-in-fact* by the CITY OF SAN MARCOS (City) had violated his **protections under law** by refusing to execute the release of **two** fraudulent liens (Texas Penal Code § 32.49) that had been discharged under Texas Tax Code § 33.54 and Texas common law [(*Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 523 (Tex. App. 2015)]. Also by doing so, the City violated the *Consignor*'s **protections under** Texas Tax Code § 34.08 from challenges to the validity of the tax sale. The City is the *cause* of the *Consignor*'s *injury-in-fact*. The *Consignor*'s *injury-in-fact* is *redressable* by **enforcement** of the *Consignor*'s **fully executed** *Affidavit of Reservation of Rights* (ARR).

(2) City has **UNAMBIGUOUSLY WAIVED ALL DEFENSES** in the ARR. Meaning, *Judgment by Default* is **REQUIRED**.

(3) City has **ADMITTED** to liability by returning the funds taken at closing (Wednesday, February 23, 2022) on Friday, July 7, 2023.

(4) *Consignor* has clearly articulated in his legal documents an *injury-in-fact* (deprivation of equal protection under law and due process of law) by allowing *Subrogation Counterclaim Defendant* TEXAS MUNICIPAL LEAGUE INTERGOVERNMENTAL RISK POOL'S (TMLIRP's) exemption from the Texas *Insurance Code* and regulation by the TEXAS DEPARTMENT OF INSURANCE (TDI) under Texas *Local Government Code* § 172.014. The unconstitutionality of Texas *Local Government Code* § 172.014 and **TMLIRP's violation of the *RICO Act*** is the *cause* of the *Consignor*'s *injury-in-fact*. The *Consignor*'s *injury-in-fact* is *redressable* by issuing a judgment **declaring** Texas *Local Government Code* § 172.014 **unconstitutional**.

(5) *Consignor* having been born in the former PANAMA CANAL ZONE prior to October 1, 1978 is a **citizen of both** the REPUBLIC OF PANAMA and the UNITED STATES and has the **benefits and protections** of Article XV and Article XVI of the *Agreement in Implementation of Article III* of the *Panama Canal Treaty of 1977* incorporated by reference in Section 9. The *Consignor* has clearly articulated in his legal documents an *injury-in-fact* by the SUPREME COURT OF THE UNITED STATES **acting outside of its' jurisdiction** in *O'Connor v. United States*, 479 U.S. 27 (1986) in violation of Article XV, Section 4. *O'Connor v. United States*, 479 U.S. 27 (1986) is the *cause* of the *Consignor*'s *injury-in-fact*. The *Consignor*'s *injury-in-fact* is *redressable* by issuing a judgment **declaring** *O'Connor v. United States*, 479 U.S. 27 (1986) **VOID** and referring both the REPUBLIC OF PANAMA and the UNITED STATES to the INTERNATIONAL TRIBUNAL OF THE LAW OF THE SEA to redress any confusion they might have in the **self-executing** nature of Article XV.

(6) *Consignor* has clearly articulated in his legal documents an *injury-in-fact* by the Trial Court **acting outside of its' jurisdiction** to declare the *Consignor* a vexatious litigant. The Trial Court, opposing counsel, and TMLIRP are the *cause* of the *Consignor*'s *injury-in-fact*.  The *Consignor*'s *injury-in-fact* is *redressable* by declaring the Trial Courts' order VOID and compensating the *Consignor* for the amount of time on *Texas' Vexatious*

Instrument Number: **202407111709**

*Litigant List* under the common law established by *Trezevant v. C*ITY OF *T*AMPA, 741 F2d 336 (11th Cir. 1984).

Resulting in the **REQUIREMENT** of the *Carrier* to act in accordance with their *Oath of Office* and complete the clearly articulated instructions.

## VII.    CLEARLY ARTICULATED INSTRUCTIONS TO THE CARRIER

Both the *Carrier* and the *Consignee* agree that the:

(1) *Carrier* is REQUIRED by their *Oath of Office* to declare the *Order Granting Defendant City of San Marcos' Motion to Declare Plaintiff Mark Joseph Watson a Vexatious Litigant* **VOID** due to lack of subject matter jurisdiction.

(2) *Carrier* is REQUIRED by their *Oath of Office* to enforce the Trial Court's verbal order (*Reporter's Record*, Volume 2, Page 28, Lines 12-14) recusing Judge Joe Pool.

(3) Carrier is REQUIRED by their *Oath of Office* to refer to the *Hays County District Attorney* and the F*EDERAL* B*UREAU OF* I*NVESTIGATION* (18 U.S.C. § 241 and 18 U.S.C. § 242) for **criminal prosecution**, the S*TATE* B*AR OF* T*EXAS* and the S*TATE* C*OMMISSION ON* J*UDICIAL* C*ONDUCT* for **sanctions**, and the U.S. D*EPARTMENT OF* H*EALTH AND* H*UMAN* S*ERVICES* (HHS) *Office for Civil Rights* (OCR) for the **HIPAA violations**.

(4) *Carrier* is REQUIRED by their *Oath of Office* to instruct the Trial Court to enter the *Consignor*'s proposed *Order Striking Down Texas Local Government Code § 172.014* into the Trial Court's record as final judgment.

(5) *Carrier* is REQUIRED by their *Oath of Office* to instruct the Trial Court to enter the *Consignor*'s proposed *Declaratory Judgment Implementing the Residual Benefits of Article XV* into the Trial Court's record as final judgment.

(6) *Carrier* is REQUIRED by their *Oath of Office* to instruct the Trial Court to enter the *Consignor*'s proposed *Judgment by Default* into the Trial Court's record as final judgment.

(7) *Carrier* is REQUIRED by their *Oath of Office* to instruct the *Hays County Treasurer* to liquidate all *Chattel Paper* held by the *Consignor* associated with this cause in accordance with Texas *Business and Commerce Code* § 9.607(5).

Resulting in the **DISPOSAL** of this matter.

## VIII.   CLEARLY ARTICULATED DECLARATION OF THE VALUE OF THE LEGAL DOCUMENTS

The agreed or "declared value" of the legal documents is hereby specifically stated to be FOURTY FOUR MILLION ONE HUNDRED NINETY ONE THOUSAND ONE HUNDRED FIVE DOLLARS AND FOURTY NINE CENTS, **$44,191,105.49** plus the "ancillary claim" at **$3,282.61 per minute** for the amount of time spent on the Texas **vexatious litigant list** [*Trezevant v. C*ITY OF *T*AMPA, 741 F2d 336 (11th Cir. 1984)] multiplied by **three** under 18 U.S.C. § 1964(c) and the amount of the freight loss, costs, and fees.

Instrument Number: **202407111709**

## IX.    LOSS OF JUDICIAL IMMUNITY

Judges typically have immunity for actions taken while on the bench. However, the cases below establish that immunity can be lost if a judge knowingly acts without jurisdiction.

(1) "When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction, judicial immunity is lost." <u>Rankin v. Howard</u>, (1980) 633 F.2d 844, cert. Den. *Zeller v. Rankin*, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326.

(2) "A judge must be acting within his jurisdiction as to subject matter and person, to be entitled to immunity from civil action for his acts." *Davis v. Burris*, 51 Ariz. 220, 75 P.2d 689 (1938).

(3) "When a judicial officer acts entirely without jurisdiction or without compliance with jurisdiction requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction." *Little v. U.S. Fidelity & Guaranty Co.*, 217 Miss. 576, 64 So. 2D 697.

(4) "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence." *Ableman v. Booth*, 21 Howard 506 (1859).

(5) "We (judges) have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohen v. Virginia*, (1821), 6 Wheat. 264 and U.S. v. Will, 499 U.S. 200.

*Non-Negotiable Bill of Lading* dated Thursday, July 11, 2024.

ALL RIGHTS RESERVED,
Texas *Business and Commerce Code* § 1-308,
Autographed on Thursday, July 11, 2024.

MARK JOSEPH WATSON, *Secured Party*

Instrument Number: **202407111709**

### EXHIBIT A - SELF-EXECUTING CONTRACT/AUTOMATICALLY PERFECTING SECURITY AGREEMENT IN THE EVENT OF A VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS OR ADJUDICATING WITHOUT JURISDICTION (SA)

An **agreed alternative** to a lawsuit filed under the *Racketeering Influenced and Corrupt Organizations Act of 1970* (RICO) [18 U.S.C. § 1964(a)] and subject to **threefold damages** under [18 U.S.C. § 1964(c)], the *Civil Rights Act of 1964* [42 U.S.C. § 1983 and/or 42 U.S.C. § 1985(3)], and the Texas *Civil Practices and Remedies Code* § 73 against the *Consignee*, and an ADMISSION in the event of a violation of constitutionally protected rights or adjudicating without jurisdiction.

*Self-executing Contract/Automatically Perfecting Security Agreement in Event of a Violation of Constitutionally Protected Rights or Adjudicating Without Jurisdiction* of the legal documents covered by the *Non-Negotiable Bill of Lading*, other than authorized use as set forth; constitutes a violation of the *Consignor*'s (secured party) constitutionally protected rights and contractually binds *Consignee* (STATE OF TEXAS). This *Non-Negotiable Bill of Lading* by declaration becomes a *Security Agreement* wherein *Consignee* is a debtor, the *Consignor* is the *Secured Party*, and signifies that *Consignee*:

(1) grants *Consignor* a security interest in all of *Consignee*'s property and interest in property in the sum certain amount of the agreed or **declared value**, plus the "ancillary claim", plus **triple damages**, plus costs;

(2) authenticates this *Security Agreement* wherein *Consignee* is debtor and the *Consignor* is the *Secured Party*, and wherein *Consignee* pledges all of *Consignee*'s property, i.e. all consumer goods, farm products, inventory, equipment, money, investment property, commercial tort claims, letters of credit, letter-of-credit rights, chattel paper, instruments, deposit accounts, accounts, documents, and general intangibles, and all *Consignee*'s interest in all such foregoing property, now owned and hereafter acquired, now existing and hereafter arising, and **wherever located**, as collateral for securing *Consignee*'s contractual obligation in favor of *Consignor* for *Consignee*'s violation of *Consignor*'s constitutionally protects rights or acting without jurisdiction;

(3) consents and agrees with *Consignor*'s filing of a *UCC Financing Statement* wherein *Consignee* is debtor and *Consignor* (and/or the *Consignor*'s *Attorney-in-Fact*) is the *Secured Party*;

(4) consents and agrees that said *UCC Financing Statement* described above in paragraph "(3)" is a continuing financing statement, and further consents and agrees with *Consignor*'s filing of any continuation statement necessary for maintaining *Consignor*'s perfected security interest in all of *Consignee*'s property and interest in property pledged as collateral in Security Agreement described above in paragraph "(2)," until *Consignee*'s contractual obligation theretofore incurred has been fully satisfied;

(5) authorizes *Consignor*'s filing of any *UCC Financing Statement*, as described above in paragraph "(3)," as well as in paragraph "(4)," and the filing of any *Security Agreement*, as described above in paragraph "(2)," with the TEXAS SECRETARY OF STATE;

(6) consents and agrees that any and all such filings described in paragraph "(4)" and "(5)" above are not, and may not be considered, bogus, and that *Consignee* will not claim that any such filing is bogus;

Instrument Number: **202407111709**

(7) **unambiguously waives all defenses with full knowledge of the consequences**; and

(8) appoints *Consignor*'s *Attorney-In-Fact* as *Authorized Representative* for *Consignee*, effective upon *Consignee*'s default re *Consignee*'s contractual obligations in favor of *Consignor* as set forth below under "Payment Terms" and "Default Terms," with full authorization and power granted *Consignor* for engaging in any and all actions on behalf of *Consignee* including, but not limited by, authentication of a record on behalf of *Consignee*, as *Consignor*, in *Consignor*'s sole discretion, deems appropriate, and *Consignee* further consents and agrees that this appointment of *Consignor*'s *Attorney-In-Fact* as *Authorized Representative* for *Consignee*, effective upon *Consignee*'s default, is irrevocable and coupled with a security interest. *Consignee* further consents and agrees with all of the following additional terms of this *Security Agreement*.

## I.      DEFAULT TERMS

In event of non-payment in full of all miscarriage of justice fees by *Consignee* within ten (10) days of date *Invoice* is sent, *Consignee* shall be deemed in default and (a) all of *Consignee*'s property and interest in property pledged as collateral by *Consignee*, as set forth in above in paragraph "(2)," immediately becomes property of *Consignor*; (b) *Consignor*'s *Attorney-In-Fact* is appointed *Consignee*' s *Authorized Representative* as set forth above in paragraph "(1)"; and (2). *Consignee* consents and agrees that *Consignor*'s *Attorney-In-Fact* may take possession of, as well as otherwise dispose of in any manner that *Consignor*'s *Attorney-In-Fact*, in *Consignor*'s *Attorney-In-Fact*'s sole discretion, deems appropriate, including, but not limited by, **sale at auction**, at any time following *Consignee*' s default, and without further notice, any and all of *Consignee*'s former property and interest in property formerly pledged as collateral by *Consignee*, **now property of *Consignor***, in respect of this *Security Agreement*, that *Consignor*, again in *Consignor*'s *Attorney-In-Fact*'s sole discretion, deems appropriate.

## II.      PAYMENT TERMS

In accordance with fees for miscarriage of justice of the property, as set forth above, *Consignee* hereby consents and agrees that *Consignee* shall pay *Consignor* all miscarriage fees in full within ten (10) days of date *Consignor*'s invoice, hereinafter "*Invoice*", itemizing said fees, is sent to tort feasor. The *Invoice* shall be submitted to the *Texas Comptroller of Public Accounts*. Terms for Curing Default: Upon event of default, as set forth above under "Default Terms", irrespective of any and all of *Consignee*'s former property and interest in property in the possession of, as well as disposed of by, *Consignor*, as authorized above under "Default Terms", *Consignee* may cure *Consignee*'s default re only the remainder of *Consignee*'s former property and interest in property formerly pledged as collateral that is neither in the possession of, nor otherwise disposed of by, *Consignor* within twenty (20) days of date of *Consignee*'s default only by payment in full.

Instrument Number: **202407111709**

### III.    TERMS OF STRICT FORECLOSURE

*Consignee*'s non-payment in full of all miscarriage fees itemized in *Invoice* within said twenty (20) day period for curing default as set forth above under "Terms for Curing Default" authorizes *Consignor*'s immediate **non-judicial strict foreclosure** on any and all remaining property and interest in property formerly pledged as collateral by *Consignee*, now property of *Consignor*, which is not in the possession of, nor otherwise disposed of by, *Consignor* upon expiration of said twenty (20) day strict foreclosure period.

### IV.    POWER OF ATTORNEY

The *Consignor* shall have power of attorney over this SA and all legal documents covered by the *Non-Negotiable Bill of Lading*. This power of attorney shall be irrevocable until the legal documents covered by the *Non-Negotiable Bill of Lading* are fully adjudicated and the financing statement is terminated. The *Attorney-in-Fact* may recover *Attorney-in-Fact*'s fees for work done on behalf of a principal that are reasonable and necessary.

### V.    RESERVATION OF RIGHTS

The *Consignor* reserves all rights pursuant to Texas *Business and Commerce Code* § 1.308, including the right to a fee of $250,000 for being compelled to perform under terms not explicitly laid out in the *Non-Negotiable Bill of Lading* and/or *Security Agreement*. Any attempt to compel performance under such terms shall constitute a breach of this contract, and the *Consignor* shall have the right to recover all costs and expenses incurred in collection of the fee, as well as *Attorney-in-Fact*'s fees.

*Security Agreement* dated Thursday, July 11, 2024.

ALL RIGHTS RESERVED,
Texas *Business and Commerce Code* § 1-308,
Autographed on Thursday, July 11, 2024.

_____
MARK JOSEPH WATSON, *Secured Party*

RESOLUTION 1986-135R

A RESOLUTION OF THE CITY COUNCIL OF THE
CITY OF SAN MARCOS, TEXAS, APPROVING THE
TERMS AND CONDITIONS OF AN INTERLOCAL
AGREEMENT BETWEEN SAID CITY AND THE TEXAS
MUNICIPAL LEAGUE JOINT SELF-INSURANCE
FUND, SAID AGREEMENT FOR THE PROVISION OF
PROPERTY AND LIABILITY INSURANCE COVERAGE
FOR SAID CITY, DIRECTING THE CITY MANAGER
TO APPOINT AN INSURANCE COORDINATOR AS
PER THE AGREEMENT, AUTHORIZING THE MAYOR
TO EXECUTE SUCH AGREEMENT AND ANY AND ALL
OTHER DOCUMENTS AND INSTRUMENTS INCIDENT
TO THE PURPOSES OF SUCH AGREEMENT, AND,
DECLARING AN EFFECTIVE DATE.

WHEREAS, the City Council of the City of San Marcos, Texas, desires to continue to participate in the Texas Municipal League Joint Self-Insurance Fund in regard to property and liability insurance coverage; now, therefore,

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF SAN MARCOS, TEXAS:

PART 1. That the terms and conditions of an interlocal agreement, copies of which are attached hereto and incorporated herein for all purposes, between said City and the Texas Municipal League Joint Self-Insurance Fund for the provision of property and liability insurance coverage for said City, are hereby in all things approved.

PART 2. That the City Manager is hereby directed to appoint an Insurance Coordinator for said City as per the terms of said Agreement.

PART 3. That the Mayor is hereby authorized to execute said Agreement and any and all other documents and instruments incident to the purposes of said Agreement.

PART 4. That this Resolution shall be in full force and effect from and after its passage.

ADOPTED this __10__ day of __November__ , 1986.

J.E. Younger
Mayor

Attest:

Janis K. Womack
City Secretary

## NEW COVERAGE EXCLUSION EFFECTIVE 10/1/86

The Texas Municipal League Joint Self-Insurance Fund Liability Coverage Document, Part IX, Exclusions Applicable to all Coverages, is ammended effective 10/1/86 to add the following exclusion:

"Unless otherwise provided in the Agreement Declarations, under specific coverages or by endorsement, the insurance provided in this Agreement does not apply to or provide coverage for the following:

Claims or suits for damages of any kind or character arising out of the bursting, breach, failure or structural defect of any dam or water reservoir disclosed each Fund Year in the application for coverage under the Agreement and for which coverage would otherwise be provided under this Agreement, where such bursting, breach or failure occurs while the dam is classified as "unsafe" by the United States Army Corps of Engineers, the Texas Water Commission or successor agency."

## NEW COVERAGE EXCLUSION EFFECTIVE 10/1/86



# *Board Communications*

| Meeting Date: | Agenda Item: |
|---|---|
| 9/14-15/86 | PCS III. E.    Liability Interlocal Agreement Changes |

Staff recommends Board approval of changes to the Joint Self Insurance Fund Interlocal Agreement as follows:

1. Definitions of the Self-Insurance Plans broadened to specifically reference the coverage documents.

2. Relationship of the Board, its agents and the TML staff indicated.

3. Minor wording changes for consistency.

4. Specific reference to Contractors and subcontractors by name is deleted.

5. Premium payment for members with deductibles in excess of $25,000 referenced.

6. Relationship of TML staff and contractor as regards claims outlined; property claims management provisions added.

| Staff: | | Date: 9/12/86 |
|---|---|---|
| Director: | | Date: 9/12/86 |
| Approved | | Date: |

Chairman, Board of Trustees

# Texas Municipal League
# Joint Self-Insurance Fund

211 East Seventh Street, Suite 1020, Austin, Texas 78701-3283

## INTERLOCAL AGREEMENT

This contract and Interlocal Agreement is entered into by and between political subdivisions of this state (hereinafter referred to as "Fund Members") to form a joint self-insurance pool to be named the Texas Municipal League Joint Self-Insurance Fund (hereinafter referred to as the "Fund") for the purpose of providing coverages against risks which are inherent in operating a political subdivision.

## WITNESSETH:

The undersigned Fund Member, in accordance with the Interlocal Cooperation Act, Article 4413 (32c), T.R.C.S. and the interpretation thereof by the Attorney General of the State of Texas (Opinion #MW-347, May 29, 1981), and in consideration of other Fund Members executing like agreements, does hereby agree to become one of the Fund Members of this self-insured pool. The conditions of embership agreed upon by and between the parties are as follows:

1. Definition of terms used in this Interlocal Agreement.

   a. **Board.** Refers to the Board of Trustees of the Texas Municipal League Workers' Compensation Joint Insurance Fund and the *Texas Municipal League Joint Self-Insurance Fund.*

   b. **Fund Year.** October 1 through September 30.

   c. **Manual Rates.** Basic rates applicable to each liability classification promulgated by the State Board of Insurance or the Board of Trustees.

   d. **TML Municipal Liability Self-Insurance Plan.** The liability coverage documents that set forth in exact detail the coverages provided as part of the overall plan.

   e. **Adjustments.** Refers to any offsets to manual premium that may result from the Member's election of deductibles, loss experience, or Fund Modifier which reflects the savings to the Fund Member by entering into this Agreement.

   f. **TML Municipal Property Self-Insurance Plan.** The property coverage documents that set forth in exact detail the çoverages provided as part of the overall plan.

   g. **Premium and Contribution.** Used interchangeably in some parts of this Interlocal Agreement. Any reference at any time in this Interlocal Agreement to an insurance term not ordinarily a part of self-insurance shall be deemed for convenience only and is not construed as being contrary to the self-insurance concept except where the context clearly indicates no other possible interpretation such as but not limited to the reference to "reinsurance."

   h. **Reimbursable Deductible.** As respects the TML Municipal Liability Self-Insurance Plan, the amount paid by the Fund that was chosen by this Fund Member to be applicable to the first monies paid by the Fund to effect judgment or settlement of any claim or suit. The Fund Member, upon notification of the action taken, shall promptly reimburse the Fund for all or such part of the deductible amount as has been paid by the Fund. Further, however, the Fund's obligation to pay damages shall be subject to the Limits of Liability stated in the Declarations of Coverage or Endorsements to this Interlocal Agreement less the stated deductible amount.

   i. **Fund Modifier.** A percentage figure that is applied to the standard rates by the Fund to reflect the savings to the Fund Member by entering into the Interlocal Agreement.

   j. **Agreement Period.** The continuous period since the Fund Member first became a member of this Fund excluding, however, any period or periods of time therein that the member did not participate as a member of the Fund.

   k. **Declarations of Coverage.** The specific indication of the coverages, limits, deductibles, contributions and special provision elected by each individual Fund Member. The Declarations of Coverage may be modified by Endorsement.

2. The Board of Trustees, acting through its agents and TML staff, is responsible for the administration of all Fund business on behalf of the Fund Members.

3. In consideration of the execution of this Agreement by and between the Member and the Fund and of the contributions of the Member, the insurance elected by the Member is afforded according to the terms of the TML Municipal Liability Self-Insurance Plan and the TML Municipal Property Self-Insurance Plan. The affirmative declaration of contributions and limits of liability in the Declarations of Coverage and Endorsements determines the applicability of the Self-Insurance Plans.

Each Fund Member agrees to adopt and accept the coverages, provisions, terms, conditions, exclusions and limitations as further provided for in the TML Self-Insurance Plans or as specifically modified by the Fund Member's Declarations of Coverage. This Interlocal Agreement shall be construed to incorporate the TML Municipal Liability Self-Insurance Plan and/or the TML Municipal Property Self-Insurance Plan, Declarations of Coverage, and Endorsements and addenda whether or not physically attached hereto.

4.   It is understood that by participating in this self-insurance pool to cover liability exposures, the Fund Member does not intend to waive any of the immunities that its officers or its employees now possess. The Fund Member recognizes the Texas Tort Claims Act and its limitations to certain governmental functions as well as it monetary limitations and that by executing this Agreement does not agree to expand those limitations.

The Fund Member, upon the execution of this agreement, shall supply the Fund with a current copy of its charter provisions or ordinance that sets out its requirement as to the number of days in which a third party liability claim must be made against it.

If the Fund Member does not have such an ordinance provision that establishes a set number of days or if it has an ordinance provision which provides for less than sixty (60) days notice and for good cause shown up to six (6) months notice the Fund Member agrees to adopt an ordinance providing for such notice reasonably describing the damage or injury claimed and the time, manner and place of the incident from which it arose. The notice requirement shall not be changed by the Fund Member without first giving the Fund thirty (30) days written notice. Violation of this provision may, at the Fund's discretion, void this Interlocal Agreement.

5.   The term of this Agreement and the self-insurance provided to the Fund Member shall be continuous commencing 12:01 A.M. on the date designated in this Agreement until terminated as provided below. Although the self-insurance provided for in this Agreement shall be continuous until terminated, the limit of liability of the Fund under the coverages that the Fund Member elects shall be limited during any Fund Year to the amount stated in the Declarations of Coverage for that Fund Year.

This Agreement may be terminated by either party giving to the other sixty (60) days prior written notice of intent to terminate except the Fund Member may terminate this Agreement and its coverages thereunder without giving the sixty (60) days notice if the reason is because of a change by the Fund in the Fund Member's contribution, coverage, or other change in the limits of liability, terms, conditions, exclusions and limita⋯ns provided for in the Texas Municipal League Self-Insurance Plans provided that no termination by the Member shall be effective prior to the date that written notice of termination is actually received in the offices of the Texas Municipal League Joint Self-Insurance Fund and provided further that the Fund Member agrees to and shall pay the applicable premium and contribution for those coverages it is terminating until the date the notice of termination is actually received by the Fund.

The Fund shall provide the Member with Declarations of Coverage and any Endorsements that determine the applicability of the Texas Municipal League Self-Insurance Plans annually by December 1. Such Declarations of Coverage shall include, but not be limited to, the coverage period which shall be the applicable Fund Year, limits, deductibles, contributions, special provisions and limitations. Changes made during the Fund Year, whether requested by the Member or required by the Fund, will be handled by Endorsement.

It is the intention of the parties that the Member's insurance coverages under this Agreement shall remain in full force and effect from Fund Year to Fund Year, subject to the limits of liability that the Fund can provide each Fund Year and the terms, conditions and limitations that the Fund may require to protect its solvency and to comply with reinsurance requirements, until notice of termination is given as herein provided. Realizing that the Fund Member needs the earliest possible information concerning the Fund coverages, limits, and exclusions and the Member's contribution that will be required for any new Fund Year, the Fund will endeavor to provide this information as soon as possible before the beginning of each new Fund Year. The parties recognize, however, that conditions in the reinsurance industry are such that the Fund may not be able to provide this information to the Member before the beginning of a Fund Year for various reasons including the failure of the Member to timely submit the appropriate exposure summary or delays on the part of reinsurers in getting information to the Fund, and so, to protect the Member from gaps in its coverage and to protect the solvency of the Fund, the parties agree as follows:

*If for any reason the Fund has not been able to provide the Member with information concerning available coverages for a new Fund Year or advise the Member of the amount of its contribution for the new Fund Year by the beginning of the Fund Year, the Fund shall nevertheless continue the Member's coverages at the same limits of liability (if still available and if not then at the highest limit of liability available for the new Fund Year) so that the Member shall at all times remain insured as herein provided and the Member's initial contributions for the new Fund Year shall be determined by a "tentative contribution" as determined by the Board with the Member's actual annual contribution to be credited by the amount paid in accordance with the tentative contribution and adjusted during the Fund Year. In the event the Member's annual contribution has not been determined at the beginning of a Fund Year due to the Member not having timely provided the exposure summary required, then the tentative contribution shall be calculated as follows: The Member's prior Fund Year's exposure base shall be increased by twenty-five percent (25%) and the resulting exposure base shall be applied to the rates applicable to the new Fund Year and the Member shall make its contribution payments based upon this rate with its annual contributions adjusted thereafter to reflect the correct annual contribution. In the event the Member does not wish to have its coverages extended or renewed at the end of any Fund Year, the burden shall be upon the Member to give written notice to the Fund as provided hereinabove and the Member agrees to pay as hereinabove stated all contributions or prorata contributions until the date such written notice is received in the offices of the Fund or the date of termination of this Agreement, whichever is later.*

6. Commensurate with the execution of this Agreement and annually thereafter, the Fund Member shall complete the appropriate exposure summary and deliver it or cause it to be delivered to the Fund, or, if so instructed, to a designated contractor, no later than September 1 of each year and new annual contributions shall be calculated using manual rates times exposure, less any adjustments. Intentional or reckless misstatements on the exposure summary shall be grounds for cancellation.

The Fund Member agrees to pay the annual contribution to the Fund in equal monthly installments, in advance, commencing at the beginning of this Agreement with subsequent installments due the first of each month thereafter. If the payable annual contribution shall be less than $5,000, it shall be payable in equal quarterly installments, in advance, commencing at the beginning of this Agreement or at the beginning of each new Fund Year, with subsequent installments due the first of each quarter thereafter. Members who elect a deductible in excess of $25,000 shall comply with the payment schedule outlined to them in advance of assuming such large deductible. In the event this Agreement is terminated as herein provided, the Fund shall promptly repay to the Fund Member any unearned annual contribution prorated as of the date of termination and the Fund Member agrees to promptly pay the Fund any unpaid annual contribution prorated as of the date of actual termination. In addition, the Fund Member agrees during the term of this Agreement to promptly pay all reimbursable deductibles upon receipt of statement.

At the end of each and every Fund Year, the Fund may require the Fund Member to submit the actual data requested on the exposure summary as reflected by the books and records of the Fund Member. The Fund reserves the right to audit the records of any Fund Member and adjust contributions accordingly.

In the event that the Fund Member fails or refuses to make the payments, including accrued interest, as herein provided the Fund reserves the right to terminate such Fund Member by giving them ten (10) days written notice and to collect any and all amounts that are earned pro rata for the period preceding contract termination. If the amounts owed, including reimbursable deductibles, have to be collected by suit, the Fund Member agrees to pay attorneys' fees and costs incurred in such suit.

7. The Fund shall maintain adequate protection from catastrophic losses to protect its financial integrity. Aggregate protection shall also be maintained to ensure that the Member shall at no time be assessed. The Member's contributions shall be limited to that amount as calculated under this agreement.

8. Notwithstanding the provisions of the foregoing paragraph, it is agreed the Board shall have the right to adjust the financial protection outlined above and/or amend coverages as it finds available or deems necessary to maintain the fiscal soundness of the Fund at the beginning of or during any Fund Year.

9. The Fund has contracted to supply loss control services to the Fund Members to assist them in following a plan of loss control that may result in reduced losses. The Contractor shall provide all of the services as provided in the service contract entered into by and between the Contractor and the Fund on behalf of the Fund Member. The Fund Member agrees that it will cooperate in instituting any and all reasonable loss control recommendations. In the event that the recommendations submitted by the Contractor on behalf of the Fund seem unreasonable, the Fund Member has a right to appeal to the Board of Trustees. The Board shall hear the objections of the Fund Member at its next regularly scheduled meeting and its decisions will be final and binding on all parties. Any Fund Member who does not agree to follow the decision of the Board shall be withdrawn from the Fund immediately.

10. The Fund Member agrees that it will appoint a coordinator of department head rank, and that the Fund shall not be required to contact any other individual except this one person. Any notice to or any agreements with the coordinator shall be binding upon the Fund Member. The Fund Member reserves the right to change the coordinator from time to time by giving written notice to the Fund.

11. The Fund agrees to handle all liability and property claims, and provide a defense for any and all liability claims covered under this agreement after prompt notice has been given. The Fund Member hereby appoints the TML Staff and the Contractor as its agents to act in all matters pertaining to processing and handling of claims covered under this agreement and shall cooperate fully in supplying any information needed or helpful in settlement or defense of such claims. As respects liability claims, the TML Staff and the Contractor shall carry on all negotiations with the claimant and his attorney and negotiate within authority previously granted by the Fund. If a personal appearance by the Fund Member or an employee is necessary, the expense of this appearance will not be the responsibility of the Fund. With the advice and consent of the Fund, the TML Staff and the Contractor will retain and supervise legal counsel for the prosecution and defense of any litigation. All decisions on individual cases shall be made by the Fund through the TML Staff and the Contractor, which includes the decision to appeal or not to appeal. However, any Fund Member shall have the right in any case to consult with the Fund on any decision made by the TML Staff or the Contractor. The Board shall hear the objections of the Fund Member at its next regularly scheduled meeting and its decision will be final and binding on all parties. Any suit brought or defended by the Fund shall be brought or defended only in the name of the Fund Member and/or its officers or employees. There shall be supplied periodically to each Fund Member a computer printout involving a statement of claims. As respects the TML Municipal Liability Self-Insurance Plan, the Fund shall have priority in enforcing its subrogaton claims as against claims of Fund Members except as to claims of the Texas Municipal League Workers' Compensation Joint Insurance Fund, which shall take preference.

12. The Fund Member acknowledges that it has received a copy of the Bylaws of the Fund and agrees to abide by the Bylaws and any amendments thereto. The Fund Member specifically acknowledges that it is a member in good standing of the TML Workers' Compensation Joint Insurance Fund and will remain a participant in that Fund during the term of this Interlocal Agreement.

13. The Fund agrees that all Fund transactions will be annually audited by a nationally recognized certified public accounting firm.

14. If legally required, the Fund shall cause to be filed the necessary tax forms with the Internal Revenue Service.

15. As the administrators of the Self-Insurance Fund, the Board shall primarily and constantly keep foremost in their deliberations and decisions in operating the Fund that each of the participating Fund Members is a "self-insured." At least annually, the Board shall carefully review, study and consider the actual claims or loss experience (including reserves for future claims payments) of each of the Fund Members, the pro rata saving to the Fund resulting from overall loss experience attributed to each Fund Member, and the pro rata portion of the cost of all catastrophic loss protection and aggregate stop loss protection allocated to each Fund Member as well as the pro rata allocation, as determined by the Board of the other and necessary administrative expenses of the Fund, in order to reasonably determine the actual pro rata cost, expense and loss experience of each Fund Member in order to maintain as nearly as possible an equitable and reasonable self-insurance administration of the Fund as applied to each Fund Member.

The Fund shall maintain case reserves and supplemental reserves computed in accordance with standard actuarial principles, taking into account historical and other data, designed to measure claims development and claims incurred but not yet reported, so that funds will be available to meet these claims as they become due. The Fund shall also establish and maintain a reserve for Return of Contributions to further ensure the fiscal integrity of the Fund in the event of a potential adverse loss development.

## TO BE COMPLETED BY CITY:

**EMPLOYER MEMBERS' FUND COORDINATOR** (See Section 10):

Name __Carolyn M. Liner__    Title __Director of Personnel__

Mailing Address ____City of San Marcos – 630 East Hopkins____

Street Address (if different from above) _____

City ___San Marcos___    Zip __78666__    Phone __1-353-4444__

_____
SIGNATURE OF AUTHORIZED CITY OFFICIAL

__City Manager__
Title

__November 13, 1986__
Date

## TO BE COMPLETED BY FUND:

Effective Date of This Agreement __10/1/86__

City Name __San Marcos__

Contract Number __CO 735__

_____
SIGNATURE OF AUTHORIZED FUND OFFICIAL

__Director__
Title

__12/1/86__
Date